**In re WPMK, INC., Debtor.**

**Bankruptcy No. 81–00424.**

United States Bankruptcy Court,
D. Hawaii.

Aug. 8, 1984.

James Wagner, Honolulu, Hawaii, for Trustee of PPVC.

Tamotsu Tanaka, Honolulu, Hawaii, for Trustee of WPMK.

John A. Chanin, Honolulu, Hawaii, for debtor.

Dean A. Fournier, San Francisco, Cal., for Security Exchange Commission.

## DECISION AND ORDER RE: FEE APPLICATION OF JOHN A. CHANIN

JON J. CHINEN, Bankruptcy Judge.

On January 5, 1982, the Law Offices of John A. Chanin ("Applicant") filed its First Application for Interim Compensation for Services Rendered and for Reimbursement of Expenses for the period covering September 28, 1981 to December 31, 1981. Applicant was appointed counsel for WPMK, Inc., ("WPMK") then Debtor-In-Possession, by Order of this Court entered December 21, 1981, effective *nunc pro tunc* as of September 17, 1981.

On March 22, 1982, Applicant filed an Application for Final Allowance for Compensation and for Reimbursement of Costs and Expenses which included the earlier period of September 28, 1981 to December 31, 1981, as well as for work performed from January 1, 1982 to March 1, 1982. The amount sought by the Applicant from Debtor's estate is $73,308.76 less $33,-470.59 already received, for a total amount due of $39,838.17.

The Federal Trade Commission ("FTC") filed a memorandum in opposition to the Applicant's fee application on May 11, 1982. The FTC also filed, on October 25, 1982, a motion to compel the return of monies received.

On January 17, 1983, attorneys for Trustees for WPMK and Paradise Palms Vacation Club, ("PPVC") filed their memoranda opposing the Applicant's fee application. They essentially join in the arguments of the FTC that Applicant should be denied further compensation because (a) no notice, hearing or approval by this court was obtained for the amounts Applicant has already received, (b) Applicant has failed to fully disclose his compensation arrangements in his fee applications and (c) Applicant received compensation from a principal and from several investors of WPMK thereby creating a conflict of interest in his representation of Debtor.

A hearing on Applicant's fee application was held on May 18, 1983, with the FTC represented by Dean A. Fournier, Esq., the Trustee for WPMK Corp., represented by Tamotsu Tanaka, Esq., the Trustee for PPVC represented by James A. Wagner, Esq. and Applicant represented by John A. Chanin, Esq.

During the hearing, Applicant raised for the first time, several objections to the use of depositions taken by the FTC. The depositions were of three individual investors of WPMK and of the president of said company. The objections are based on lack of foundation by the deposer, use of facts not in evidence, leading questions, compound questions, and answers calling for speculation. None of these objections, however, were raised during the depositions, although the Applicant was present at all but one of the depositions. The one deposition at which the Applicant was not present, because of want of notice, was not used or relied on by the FTC.

Federal Rules of Civil Procedure, Rule 32(a)(3) states in pertinent part:

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, ....

Subsection (d)(3)(B) of this same Rule provides:

> *Errors and irregularities occurring at the oral examination* in the manner of taking the deposition, in the form of questions or answers, ... *and errors of any kind which may be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made* at the taking of the deposition. (emphasis added).

██ Applicant does not contest that the deponents are more than 100 miles from the state. Furthermore, Applicant did not object to any of the questions during the depositions, even though he had ample opportunity to do so. He therefore is deemed to have waived those objections which

might have been cured if presented at the deposition. FRCP 32(d)(3)(B); *Collins v. Parkinson*, 98 Idaho 871, 574 P.2d 913 (1978). Thus, Applicant's objections to the use of the depositions taken by FTC are without merit.

Based on the arguments of counsel, the memoranda and records contained herein, the Court enters the following Findings of Fact and Conclusions of Law regarding the fee application.

## FINDINGS OF FACT

Applicant was originally retained in September of 1981 to represent WPMK and PPVC in litigation involving the Apartment Owners Association of Discovery Bay. Applicant was paid a $5,000.00 retainer, of which he applied half to WPMK's account and the other half to PPVC's account. At this time, WPMK was in an involuntary Chapter 7 bankruptcy proceeding under a petition for relief filed on July 29, 1981. Subsequently, on October 19, 1981, the case was converted to a Chapter 11 proceeding.

On December 21, 1981, Applicant was appointed attorney for WPMK as Debtor-in-possession under general retainer, *nunc pro tunc*, retroactive to September 17, 1981.

Sometime between October 19, 1981 and December 21, 1981, Scott Nakagawa, WPMK's court-appointed interim trustee in the involuntary Chapter 7, recovered from the State of Hawaii a $20,000.00 bond posted by a Mr. Harry Angel, an investor in WPMK. The bond was required by the State of all time-sharing companies as security to protect consumers against fraudulent time-sharing practices. Mr. Nakagawa transmitted the $20,000.00 to WPMK which in turn, through its president, paid this amount to Applicant for compensation for professional services.

The initial $5000.00 retainer and the $20,000.00 distributed to Applicant were paid without prior court approval. Applicant did, however, disclose receiving $22,446.96 for professional services from WPMK in his Disclosure of Retainer and Compensation Paid and/or Promised to Proposed Attorneys for Debtor-in-Possession. This disclosure was made in connection with his application for employment as WPMK's attorney filed on December 21, 1981.

In the latter part of December of 1981, Applicant discussed with three of the investors and the principal of WPMK, payment of additional compensation. In an automobile ride from the office of the General Acceptance Corporation in Seattle to the Seattle-Tacoma Airport, Applicant entered into an agreement with Mr. Ben Kirk, the former president and an investor in WPMK, and Messrs. Michael Stern, Ronald Caldren and Harry Angel, all investors in WPMK, for an additional $25,000.00. Pursuant to this agreement, $7,500.00 was paid to Applicant by Michael Stern on behalf of himself and Mr. Ben Kirk; $12,500.00 was paid by Ron Caldren on behalf of himself and Mr. Harry Angel.

Applicant allocated this money between WPMK and PPVC. Approximately $9,000.00 was allocated to the prior litigation involving WPMK and PPVC against the apartment owners of Discovery Bay; the remaining $11,000.00 was used as payment for services rendered in connection with WPMK's bankruptcy proceeding.

At the time that the investors and principal of WPMK made their contributions to Applicant, the understanding was that Applicant would reimburse the individuals whenever Applicant received his fees through the Bankruptcy Court.

On June 25, 1982, Messrs. Kirk, Stern, Caldron and Angel filed a proof of claim against the estate of WPMK and PPVC for $20,000.00.

The FTC and the Trustees for WPMK and PPVC object to Applicant's fee application in that: (1) the $22,446.96 paid as a general retainer was disbursed to Applicant without prior court approval; (2) the $20,000.00 from a principal and three investors of WPMK placed Applicant in a potentially conflict of interest situation with WPMK; and (3) the time spent by Applicant after January 25, 1982 was not to the

benefit of the estates of WPMK and PPVC. Furthermore, the FTC argues that Applicant should be compelled to account for and return to debtor's estate, no less than the sum of $45,000.00.

The following Conclusions of Law, insofar as they are Findings of Fact, are incorporated by reference in the Findings of Fact hereinabove stated.

## CONCLUSIONS OF LAW

**A. Applicant Received Compensation Without Approval of the Court.**

Pursuant to 11 U.S.C. § 330, the Court may award to the debtor's attorney reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses. Section 331 of 11 U.S.C., dealing with interim compensation, provides that "After notice and a hearing, the court may allow and disburse to such Applicant such compensation or reimbursement."

█ In the present case, Applicant received payment of $22,446.96 from Debtor's estate without this court's approval. The $22,446.96 received by Applicant was thus in violation of sections 330 and 331 of the Bankruptcy Code.

**B. Applicant's Failure to Disclose the Receipt of $20,000.00 from the Principal and Individual Investors of WPMK.**

Rule 219, of the Bankruptcy Rules of 1979, requires that persons seeking compensation for their services file with the Court an application setting forth in detail, a statement of services rendered and expenses incurred in addition to the amounts requested. Under part (b) of Rule 219, Applicant must disclose his compensation arrangements. This section provides:

(b) Disclosure & Compensation Paid or Promised to attorney for Bankrupt. *Every attorney for a bankrupt,* whether or not he applies for compensation, *shall file with court ..., a statement setting forth the compensation paid* or promised him for the services rendered or to be rendered in connection with the case, *the source of the compensation so paid* or promised, *and whether the attorney has shared or agreed to share such compensation with any other person.* (emphasis added).

Applicant did disclose the receipt of $22,446.96 for professional services in his Disclosure of Retainer and Compensation Paid and/or Promised to Proposed Attorney for Debtor-in-Possession filed on December 21, 1981. His first application for interim compensation also reveals payment of these monies from WPMK as does his Application for final allowance filed on March 22, 1982. However, Applicant failed to disclose that the source of the $20,000.00 was from a principal of WPMK and three individual investors, all creditors of WPMK.

█ In his March 22, 1982 application for final allowance and reimbursement, Applicant states under section D that he has received $22,446.96 in accordance with the disclosure statement filed on December 21, 1981, as well as subsequent payments of $11,023.63. Nowhere, however, is there mention of the $20,000.00 received from Messrs. Kirk, Stern, Caldron and Angel. Nor does he disclose the understanding with the four individuals that they were to be reimbursed their contributions upon this court's approval and payment of Applicant's fees. This omission clearly contravenes the disclosure requirement of Bankruptcy Rule 219(b).

**C. Applicant's Receipt of $20,000.00 from the Principal and Investors of Debtor-in-Possession Created a Conflict of Interest Situation.**

█ This court has said on more than one occasion that attorneys have a duty to exercise independent professional judgment free from compromising influences and loyalties. The interests of any other person should not affect an attorney's basic judgment and responsibility to his client. Rules of Hawaii Supreme Court, Exhibit A, Code of Professional Responsibility Canon 5; *In Re Holiday Mart, Inc.,* Bk. No. 77–00565 (filed October 10, 1980);

*In re 765 Associates,* 14 B.R. 449 (Bankr. Haw.1981).

■ An attorney should not place himself in a position where he may be required to choose between conflicting duties. *In Re Holiday Mart, Inc., supra; In re 765 Associates, supra, In re Bergdog Productions of Hawaii, Inc.,* 7 B.R. 890 (Bankr. Haw.1980).

■ When an attorney is retained by a corporation, his responsibilities and loyalties are to the corporation and not to individual employees, officers, or directors of the company. See Rules of Hawaii Supreme Court, Exhibit A, Code of Professional Responsibility, Ethical Considerations 5–18; *In Re Holiday Mart, Inc., supra.*

In *In Re Holiday Mart, Inc.,* an attorney [1] was denied interim compensation and ordered to return all fees paid to him because of a conflict of interest situation. The attorney had received compensation from the principal shareholder and chief executive of the debtor as payment for services rendered on behalf of the debtor. There was an understanding that the principal would be reimbursed for the monies so advanced once the court awarded the attorney his fees from the debtor's estate. Even though the payment was made with the understanding that nothing was to interfere with the way the attorney handled the debtor's affairs, the court said,

> [B]y accepting compensation from Edwin Yee (the principal) the applicant changed an otherwise delicate situation into a situation in which an actual conflict of interest existed. Taking compensation from an individual officer poses a substantially greater temptation for the debtor's attorney to deviate from his duty of undivided loyalty to his client, the corporate debtor.

*In Re Holiday Mart, Inc., supra,* at pp. 9–10.

In *In Re Bergdog Productions of Hawaii, Inc., supra,* debtor's application to retain the law firm of Gelber & Wagner

was denied because the firm had received payment of $2,000.00 from stockholders of the debtor. The stockholders were to be reimbursed from the debtor's estate upon the court approving the attorneys' fee application. Once this arrangement was revealed to the court, the court refused to authorize appointment of the law firm as counsel for debtor. Referring to its decision in *In Re Holiday Mart, Inc.,* this court in *In re Bergdog,* citing from *Gillette v. Newhouse Realty Co.,* 75 Utah 13, 282 P. 776 (Utah 1929), stated:

> The rule that an attorney may not by his contract of employment place himself in a position where his own interests or the interest of another, whom he represents, conflict with the interests of his client, is founded upon principles of public policy. It is designed to serve various purposes, among them, to prevent the dishonest practitioner from fraudulent conduct, to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties or between his own interests and those of his client, to remove from the attorney any temptation which may tend to cause him to deviate from his duty of enforcing to the full extent the right of his client, to further the orderly administration of justice, and to foster respect for the profession and the courts.... *It is this potential conflict that Canon 5 addresses with its mandate restricting the attorney's duty of loyalty to the corporate debtor alone.* (emphasis added.)

*In re Bergdog, supra,* at 891, 892.

Finally in *In Re 765 Associates, supra,* this court once more admonished against the evils of an attorney placing himself in a position where he may be forced to choose between conflicting duties. There, debtor's former attorney had filed for allowance of compensation and costs which was opposed by debtor's substituted counsel, John A. Chanin. Among the many objections raised by debtor's counsel was a potential

---

**1.** Ironically the attorney therein is the Applicant in the present case.

conflict of interest situation, since the applicant was the attorney for one of debtor's creditors. It was subsequently disclosed that the applicant was indeed representing one of the creditors of debtor and that applicant had received an earlier payment for compensation from a general partner and creditor of debtor.

In disallowing the claim for compensation, this court referred to the Supreme Court case of *Woods v. City National Bank*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941), where the Supreme Court recited:

> Where a claimant ... was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted. The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules is apposite here: *"what is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases."* (emphasis added.)

312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (citations omitted).

 An attorney representing a debtor should not receive payment, either directly or indirectly, from any of the creditors. *In re 765 Associates, supra,* at 451. If at anytime an attorney receives compensation from one holding an interest adverse to the estate, it is highly improper for the attorney to render advice to such person in relation to his claims and interests against the estate. *Id.* Furthermore, section 328(c) of the Code authorizes the court to deny an attorney compensation and reimbursement of expenses whenever a conflict of interest situation arises. *Id.*

Section 328(c) of 11 U.S.C. provides:

> (c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, *the court may deny allowance of compensation for services and reimbursement of expenses of a professional person* employed under section 327 or 1103 of

this title *if, at any time during such professional person's employment* under section 327 or 1103 of this title, *such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate* with respect to the matter on which such professional person is employed. (emphasis added).

 Finally, Applicant's argument that the court cannot deny the compensation and reimbursement sought herein without first finding an *actual* conflict of interest is not supported by the greater weight of case law within this jurisdiction. Time after time, in each of this court's decisions dealing with conflict of interest situations, the approval or denial of compensation has hinged upon whether or not the attorney was placed in a position of being required to choose between conflicting duties and interests. "It is no answer to say that fraud or unfairness were not shown to have resulted". *In re 765 Associates, supra,* at 451, quoting from *Woods v. City National Bank, supra.* The public policy is to avoid even potentially conflicting situations.

Based on the foregoing, the Court having found that,

(1) The $22,446.96 retainer received by Applicant from WPMK was paid without notice and a hearing and was applied to WPMK's account without the approval of the Bankruptcy Court and that,

 (2) Applicant's acceptance of funds from the principal and investors of WPMK created a conflict of interest situation making it inappropriate for Applicant to continue representing WPMK.

 **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Applicant's petition for compensation for services rendered and reimbursement of expenses is denied. All fees previously paid to Applicant are ordered to be returned to Debtor's estate.