756 P.2d 316

**In the Matter of a Member of the State Bar of Arizona Michael Anthony CARRAGHER, Respondent.**

**No. SB–87–0016–D.**

Supreme Court of Arizona,
In Banc.

June 7, 1988.

As Modified July 11, 1988.

Alex A. Gaynes, Tucson, for respondent.

Bilby & Shoenhair, P.C., Tucson by Michael J. Rusing State Bar Counsel.

CAMERON, Justice.

Respondent, Michael Anthony Carragher, was charged with unethical conduct arising out of his representation of Linnette A. Peterson and her estate.[1] Specifically, it is alleged that:

1. During the course of Respondent's representation of Linnette A. Peterson, Respondent failed to maintain records of funds of Linnette A. Peterson which came into the possession of the Respondent. In so doing, Respondent violated the Code of Professional Responsibility, DR 9–102(B)(3).

2. Following termination of the attorney-client relationship between Respondent and Linnette A. Peterson, the Respondent failed to render appropriate accountings to Linnette A. Peterson regarding funds which came into Respondent's possession, despite demand by Linnette A. Peterson and her attorney for such an accounting. As such, Respondent violated the Code of Professional Responsibility, DR 9–102(B)(3).

3. The Respondent failed promptly to pay or deliver to Linnette A. Peterson, or her estate, the $15,000 (approximate) which Linnette A. Peterson and/or her estate were entitled to receive and, as such, violated the Code of Professional Responsibility, DR 9–102(B)(4) and Rule 29(B)(6) of the Rules of the Supreme Court.

4. The pleading entitled "Summary of Accounting" in Graham County Superior Court, Cause No. 10246, captioned "In re the Estate of: Linnette A. Peterson, a protective arrangement" materially misrepresented a fact when at page 12, paragraph C, subparagraph (a), it characterized a $40,000 payment to Michael Carragher as "the balance of attorney's fees due under the fee agreement." As such, the pleading violates the Code of Professional Responsibility, DR 1–102(A)(4) and (5).

5. With regard to the $15,000 received by Respondent upon close of the Chandler property, Respondent failed to deposit said funds in an identifiable bank account separate from the funds of Respondent, in violation of the Code of Professional Responsibility, specifically DR 9–102(A).

---

**1.** The conduct in question occurred prior to the adoption of the Model Rules of Professional Conduct of the American Bar Association as amended, Rule 42, Arizona Rules of Profession-

al Conduct, effective 1 February 1985. Thus, the Respondent was charged under the previous Code of Professional Responsibility, Ariz.R.S.Ct. 29(a), 17A A.R.S., effective 1 November 1970.

The Local Administrative Committee found Respondent violated the Code of Professional Responsibility and recommended a six-month suspension from the practice of law. The Disciplinary Commission of the Supreme Court agreed with the Local Administrative Committee and made the same recommendation to this court. We have jurisdiction pursuant to Ariz.R.S.Ct. 46 and 53(e), 17A A.R.S.

## FACTS

As the Local Administrative Committee noted, this case involved the representation of Linnette A. Peterson, who resided alone in Safford and lived a modest lifestyle. Her grandson, Steven Craig, and his wife, looked after her needs, which were the normal needs of an 80–year–old woman in fair health. Steven Craig was evidently quite close to his grandmother and was the one who introduced Mrs. Peterson to Respondent, Michael Carragher. It appeared that Mr. Craig remained vitally interested, both through counsel and personally, in Mrs. Peterson. Mrs. Peterson died in 1983.

Mrs. Peterson was the owner of a 160 acre farm in Chandler which was leased to a farmer for approximately $30,000 per year. She survived solely on the income from the farm. At the time of the events in this case, the property had increased in value as subdivision land worth over $4,000,000 dollars.

Mrs. Peterson had two daughters, one of whom resided in Yuma, Arizona. In 1973, Mrs. Peterson's daughter in Yuma had her attorney draft a "Living Trust" for Mrs. Peterson. The corpus of the trust was the farm. An "amendment" was subsequently drafted. In early 1979, Mrs. Peterson's other daughter and Craig sought the services of Respondent in Safford, Arizona to evaluate the effect of the "amendment." Respondent did so and, shortly thereafter, met with Mrs. Peterson. Respondent disagreed with the approach that the Yuma attorney had taken regarding the trust. He believed that the so-called "family farm exemption" was not available to protect the estate from taxes when Mrs. Peterson passed away. In this regard, he received

help from others, including accountants and tax planners. By this time the Chandler land had been sold.

Respondent began to represent Mrs. Peterson and, over the course of several months, put together a rather extensive estate plan. At this time Mrs. Peterson paid Respondent $10,000 for fees and costs. Respondent submitted two fee proposals to Mrs. Peterson for future work he felt had to be accomplished in carrying out the estate plan he had created. On February 14, 1980, Mrs. Peterson opted for one of the proposals and entered an agreement with Respondent for future legal services.

The agreement indicated that Respondent would continue to represent Mrs. Peterson in her legal problems and in managing her property. Respondent also expected to remain as Mrs. Peterson's personal representative under her will, billing "only and in no event any amount greater than the statutory fee a personal representative would otherwise be entitled to."

On 7 January 1981, Mrs. Peterson went to Yuma, Arizona, with her daughter. She was ill and had been recently hospitalized prior. On 30 January 1981, Respondent received a letter from Mrs. Peterson revoking a previously granted Power of Attorney with instructions not "to act on my behalf unless given specific written instructions to do so by me or by another person who holds a current power of attorney executed by me." Shortly thereafter, Respondent received a second letter from Mrs. Peterson, requesting a complete accounting of all sums received by Respondent.

Respondent believed that his client had been "stolen" by the daughter's Yuma attorney. He was unable to communicate with his client after receiving the two letters, and he and Steven Craig were "convinced" that the client had literally been "kidnapped" and was being held against her will in Yuma by her daughters.

A Petition for Writ of Habeas Corpus was brought in Graham County Superior Court by Steven Craig with a supporting affidavit by Respondent. The Writ sought to have Mrs. Peterson returned to Safford

so that the Graham County Superior Court Judge might make a decision as to whether or not she was being held against her wishes by her daughters in Yuma.

When Craig's attorney, through the Yuma County Sheriff, attempted to execute the Writ, they were prevented from doing so. Allegations and cross-allegations of *ex parte* influence by the Yuma attorney, and denials thereof, were rampant. All of the "interested parties" then met in Safford and it was agreed that Valley National Bank would be appointed to control the financial affairs of Mrs. Peterson. Valley National Bank accepted the appointment. Subsequently, the Graham County Superior Court Judge entered an order, without a hearing, terminating the conservatorship, and allowing Valley National Bank to withdraw. Again, the parties made allegations and cross-allegations of *ex parte* influence. After the conservatorship was terminated in Graham County, a new proceeding was instituted in Yuma and, after a hearing, the Court ordered that the two daughters be appointed co-conservators of the estate of Mrs. Peterson. As the Local Administrative Court noted:

As one can see from the foregoing, a very wealthy, very elderly, woman was being figuratively pulled apart by competing interests. We make no judgment as to whether the motivation of the beneficiaries was fueled by their personal financial concerns, or love of their relative, or some combination. That is not our role; and nothing herein is intended to express an opinion in that regard. We do, however, make specific findings of fact regarding the role of the Respondent herein. We specifically decline Respondent's counsel's invitation to pass on the propriety of the conduct of any attorney other than Respondent in a definitive fashion. None of the other attorneys were formally complained against, nor were they given any opportunity to appear and defend themselves against any complaint.

The Local Administrative Committee found that the Respondent had failed to maintain records, provide a proper accounting, and failed to put his client's funds in a trust account.

Specifically the Committee questioned the "Summary of Accounting" filed by the Respondent which contained the following notation:

Net surplus in proceeds of 1031 property exchange NOTE: (the net case acquisition amounts were all distributed under escrow number 780002786–3 and accounted for therein. After distribution there was a surplus of $73,512. $40,000 of the surplus was paid direct to Michael Carragher as the *balance of attorney's fee due* under the fee agreement and $33,512.01 was deposited in Mrs. Peterson's FNB account # 325–11715). (Emphasis supplied)

At the time of the accounting, the amount owed Respondent was $25,000. The Respondent retained the additional $15,000 which he characterized as a "retainer" to be used to pay future hourly services. Said funds were not placed in a trust account, and no documentary evidence of billing against said funds was presented on behalf of Respondent at the hearing. The $15,000 of "retainer money" was used by Respondent to operate his law office.

The Local Administrative Committee made the following statement in recommendation:

We conclude that the Respondent has violated a number of the Rules of Professional Conduct. Nonetheless, we also feel that there are many factors which militate against harsh discipline in this matter. Among these are the fact that whether or not Respondent actually had an oral agreement with the now-deceased Linnette Peterson which would have allowed him to retain the additional $15,000 as and for a retainer against future services is a very close question. If indeed he had such an arrangement, then, although he clearly violated the Rules of Professional Conduct by failing to establish a trust account, he is not guilty of a fraud upon his former client. The evidence is conflicting and unclear in this regard and we are unable to conclude the

**222**

Respondent defrauded his client in originally retaining the $15,000.

Certainly the Respondent was in a very difficult position when he received the termination notice and request for accounting. He was not allowed to speak to his client for some period of time, and was evidently quite concerned about items that had to be accomplished to effectuate the estate plan and protect the assets of his client.

\* \* \* \* \* \*

The difficulty that the Committee faces in attempting fairly to adjudge Respondent's record keeping has been his failure to provide relevant record information even faced with these very serious charges.

\* \* \* \* \* \*

It is our further recommendation that the Respondent should be suspended from the practice of law for a period of six months.

The matter was heard by the Disciplinary Commission of the Supreme Court of Arizona which agreed with the Committee's ruling.

We agree with the Local Administrative Committee and the Commission. We believe that the retention of funds which should have been placed in a trust account was improper. We also believe that failing to account at a time when the accounting is requested is equally serious. It may well be that Respondent felt he had the right to keep the $15,000, and, indeed, the Local Administrative Committee did allow him a portion of that for work actually performed on the estate.[2] Whether requested or not, he had an absolute ethical obligation to account for all money that had come into his possession.

The recommendation of the Local Administrative Committee that respondent pay restitution to the estate of Linette A. Peterson in the amount of $13,500 with interest thereon at the rate of ten percent from the date of April 15, 1986 until paid is approved and that otherwise the recommendations of

the Local Disciplinary Committee and the Disciplinary Commission of the State of Arizona are adopted.

Respondent is suspended from the practice of law for six months and costs and expenses of $5,466.55 are assessed.

GORDON, C.J., FELDMAN, V.C.J., and HOLOHAN and MOELLER, JJ., concur.

---

**2.** The committee and the commission correctly gave Respondent credit for some later work performed and thus the amount due the estate is $13,500, not $15,000.