**In re CRIMSON INVESTMENTS, N.V., a Netherlands Antilles corporation, Debtors.**

**Bankruptcy No. B–88–5647–PHX–SSC.**

United States Bankruptcy Court, D. Arizona.

Oct. 5, 1989.

John C. Hover, Phoenix, Ariz., for debtor.

Joseph C. McDaniel, I. Marshall Gan, McDaniel & Lee P.C., and Gary J. Jaburg, Jaburg & Wilk, P.C., Phoenix, Ariz., Formerly Proposed Counsel to Debtor-in-Possession.

## MEMORANDUM DECISION AND ORDER

SARAH SHARER CURLEY, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court on the Application of McDaniel & Jaburg, now the two separate firms of McDaniel & Lee and Jaburg & Wilk (hereinafter "Applicant"), for compensation of legal fees and costs.

The initial Application was filed with this Court on July 21, 1988. An oral Objection to the Application was noted by Craftsmanship Development, Inc., the secured creditor of the Debtor, at the initial Hearing on the issue of retention, which Hearing was held on December 8, 1988.

On January 13, 1989, the Managing Agent of the Debtor filed an Affidavit with this Court attempting to explain further the fee arrangement.

On May 1, 1989, Craftsmanship filed a written Objection and Memorandum of Points and Authorities on the Applicant's retention request.

On May 2, 1989, the law firm of McDaniel & Lee filed a withdrawal of their request to be retained as counsel for the Debtor.

Irrespective of the fact that Applicant had withdrawn its request to represent the Debtor, the Applicant still requested that it be paid its legal fees and costs. To this end, Applicant filed on July 14, 1989 a Joint Application of McDaniel & Lee and Jaburg & Wilk containing detailed billing statements supporting the request for compensation.

On July 19, 1989 Craftsmanship filed a Memorandum Opposing any Compensation be paid to Applicant, and requesting that the retainer received by Applicant be turned over to the Clerk of the Court.

Numerous Hearings were conducted on this matter. They were held on December 8, 1988; April 7, 1989; May 2, 1989; and June 15, 1989. An evidentiary hearing was held on the legal fees and costs requested by Applicant on July 20, 1989.

Applicant requested that this Court defer its decision until Applicant could obtain a copy of the transcript of the Hearing before this Court on December 8, 1988. On August 3, 1989, Applicant filed a Statement with this Court waiving its request that the Court defer decision, because Applicant conceded that the Court's recollection of the December 8, 1988 Hearing was correct.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This decision shall constitute this Court's findings of fact and conclusion of law pursuant to Bankruptcy Rule 7052.

### FACTUAL BACKGROUND

On or about July 21, 1988, Frank R. Zunick, as attorney-in-fact for Crimson Investments, N.V., entered into a fee agreement with McDaniel & Jaburg, P.C. to represent Crimson Investments, N.V. in connection with filing a Chapter 11 petition on the corporation's behalf.

On July 21, 1988, the petition initiating the above-captioned case was filed in this Court.

On or about July 21, 1988, the Debtor in Possession filed, through its attorney-in-fact, Frank R. Zunick, an Application to Employ Counsel Subject to Order of Explicit Approval of Terms of Employment.

On or about July 21, 1988, the Debtor in Possession, acting through its attorney-in-fact, Frank R. Zunick, and Applicant McDaniel & Jaburg, P.C., filed a Joint Motion for Explicit Approval of Terms of Employment of Legal Counsel ("Joint Motion"). In the Joint Motion, Applicant only disclosed that the terms of employment for which approval was sought entailed the prepetition payment to Applicant of $7,500.00 from "non-estate funds" and a postpetition payment of $12,500.00 from "non-estate funds," with both payments to serve as a retainer for fees to be earned in this case. The Joint Motion also sought immediate authorization to apply the retainer to fees billed the Debtor in Possession, pending subsequent Court review of the fees charged.

On August 2, 1988, Debtor's Counsel filed an Affidavit of Proposed Attorney for Debtor in Possession Pursuant to Rules 2014 and 2016 of the Rules of Bankruptcy Procedure (the "Affidavit"), which stated: "None of the members of [Debtor's Counsel's] firm, nor [Debtor's Counsel's] firm itself, has any connection with the Debtor, creditors or any other party-in-interest herein, or their respective attorneys or accountants." The following day, August 3, 1988, Debtor filed a Statement of Financial Affairs for Debtor Engaged in Business indicating that Debtor's sole shareholder was Hussain H.A. Behbehani ("Behbehani"), a resident of Spain, and that Debtor's two largest unsecured creditors were Behco Investment Corporation and Driffield Corporation, both corporations being under the control of Behbehani.

Because of the unusual billing procedure requested by Applicant in a routine Chapter 11 proceeding concerning undeveloped land in an area thirty-five (35) miles West of Phoenix (which area is the 48,000 acre development known as "Sun Valley"), the Court set a hearing (upon notice to all creditors and interested parties) for December 8, 1988.

The Applicant had requested that it be able to setoff against the retainer on a monthly basis, with a detailed fee application to be filed with the Court and noticed to creditors and interested parties every 120 days. Under this procedure, the legal fees and costs would be paid on a current basis, with Court scrutiny only every 150 to 180 days. This procedure had been developed by Applicant who was allegedly relying on the then recent Bankruptcy Appellate Panel decision of *In re Knudsen,* 84 B.R. 668 (9th Cir.1988). Applicant's reliance on *Knudsen* was misplaced. There was nothing unusual or unique about this Chapter 11 proceeding which would have warranted this Court's adoption of *Knudsen* to the facts presented in this Chapter 11.

At the time, this Court also had insufficient information about the source of Applicant's funds without having a hearing on the matter.

Therefore, the Hearing on December 8, 1988 was to address two points: the unusual procedure requested by Applicant to pay its legal fees and expenses, and the source of the funds from which Applicant had received its retainer.

At the December 8, 1988 Hearing, the secured creditor, Craftsmanship, orally objected to the Joint Motion concerning retention of counsel. Craftsmanship stated it needed to do additional discovery to determine (1) the source of the retainer funds; (2) how Mr. Behbehani, the Debtors' sole shareholder, was involved in the Chapter 11 proceedings; (3) what, if any, action he had pursued on behalf of the Debtor; and (4) whether Debtor's proposed counsel (given the potential actions on behalf of Mr. Behbehani and other parties) was, in fact, disinterested.

At the December 8, 1988 Hearing the Court's concerns were not addressed. Although the Court was advised that the retainer had been received from third parties, the Court was still not advised as to

the source of the funds. It was unclear to the Court whether Mr. Behbehani, the Debtor's sole shareholder, was acting on behalf of himself, unsecured creditors, or the Debtor. Depending on how Mr. Behbehani was involved in the Chapter 11 proceedings, a serious issue could be, or already had been, raised as to whether Debtor's proposed counsel was "disinterested" pursuant to 11 U.S.C. § 101(13).

The Court was also concerned as to whether the Debtor's proposed counsel was willing to waive any claim against the Debtor's estate, since its legal fees and costs were being paid by a third party.

On January 11, 1989, Debtor's Managing Agent revealed to the Court, *for the first time,* that Mr. Behbehani was the sole owner of Driffield Corporation ("Driffield) and the owner of 47 percent of Behco Investment Corporation (Behco"), the two principal unsecured creditors of the Debtor. At a Status Hearing on April 7, 1989, the Court was advised that Debtor's proposed counsel waived any claim against the estate for legal fees and costs. However, on April 7, 1989, the Court stated it still had *insufficient information* as to the interrelationship between Mr. Behbehani, the unsecured creditors, and the Debtor, and the source of funds of the retainer for Debtor's proposed counsel to make a determination as to whether Debtor's proposed counsel was disinterested.

On April 21, 1989, the Debtor first revealed to Craftsmanship that Debtor's proposed counsel had received *prepetition and postpetition* payments, constituting its retainer, from Behco and Driffield, Debtor's largest unsecured creditors.

At the May 2, 1989 Hearing, the Court stated that since Debtor's proposed counsel was withdrawing, the retainer should be held by the Debtor as property of the estate. Debtor's proposed counsel stated that the funds should be paid to the third parties which had advanced the funds.

Subsequently, counsel requested that it be paid its legal fees and costs even though counsel had never been appointed as counsel for the Debtor.

The other documentation filed with this Court, and the Hearings held by this Court are fully set forth in the Preliminary Statement.

## LEGAL ISSUES

I. WHETHER THE RETAINER CONSTITUTES PROPERTY OF THE DEBTOR'S ESTATE.

II. WHETHER APPLICANT SHOULD BE PAID ITS LEGAL FEES AND COSTS, ALTHOUGH IT WAS NOT APPOINTED COUNSEL FOR THE DEBTOR.

## DISCUSSION

### I

■ The Bankruptcy Court is obligated, upon the request of a party-in-interest, or *sua sponte,* to review the fee arrangement entered into by Debtor's counsel with the Debtor, irrespective of the source of compensation of Debtor's counsel. 11 U.S.C. § 329, Bankruptcy Rule 2017, *In re Leff,* 88 B.R. 105, 106 (Bankr.N.D.Tex.1988); *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 574 (Bankr.N.D.Tex.1986).

■ The Bankruptcy Court may order the return to the Debtor of any payment made to an attorney representing the Debtor in connection with a bankruptcy proceeding, irrespective of the source of payment. 11 U.S.C. § 329(b); *Chapel Gate Apartments, supra,* 64 B.R. 569, 572; *In re Kendavis Industries International, Inc.,* 91 B.R. 742, 747 (Bankr.N.D.Tex.1988). *See* Bankruptcy Rule 2019(b).

■ Section 327(a) and Section 101(13) of the Bankruptcy Code require that the Court only appoint counsel for the Debtor that is a "disinterested person."[1] In this

---

1. 11 U.S.C. § 101(13) provides that a "disinterested person" is a person that—
   (A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;
(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or

matter, *after months* of this Court and an objecting creditor attempting to obtain information as to whether Debtor's counsel was disinterested, it was disclosed to this Court, as of *April, 1989,* that Debtor's counsel had received its *prepetition and postpetition* retainer payments from unsecured creditors of the Debtor controlled by Mr. Behbehani, who also is the principal and sole shareholder of the Debtor.

What concerns the Court is the lack of candor of Debtor's proposed counsel with this Court and the objecting creditor.

At the July 20, 1989 Hearing, fully one year after Applicant's initial request for retention was filed with this Court, Debtor's proposed counsel classified the problem as "two inadvertent, harmless errors." The first error, according to counsel, was a failure to disclose the precise source of the prepetition and postpetition payments constituting the retainer. The second error was a failure to comply with Bankruptcy Rule 2016(b).[2] Although this Rule was amended in 1987, requiring proposed counsel within 15 days of the Order for Relief being entered (which in this matter would be the filing of the Chapter 11 petition) to file a Statement setting forth, *inter alia,* the *source* of any compensation to be received, and to disclose further within 15 days *any payment* not previously disclosed, counsel stated at the July 20, 1989 Hearing that he was unfamiliar with such requirements. Counsel's unfamiliarity with the 1987 changes to Bankruptcy Rule 2016(b) is particularly unfortunate, since he

is a certified bankruptcy specialist with the State Bar of Arizona. Even though the Court as early as *December, 1988,* stated that it had insufficient information about the *source* of the retainer turned over to Debtor's proposed counsel, and the interrelationship between Debtor's counsel, Mr. Behbehani, the Debtor, and the unsecured creditors to the proceeding, Debtor's proposed counsel did not provide such information until the end of *April, 1989. This failure to disclose critical information to the Court, so that the Court might make an informed decision as to whether counsel should be appointed on behalf of the Debtor, frustrated the disclosure provisions of Section 329 and Bankruptcy Rule 2016.* This Court believes that this action should not be condoned by any Court. The only remedy is to direct the immediate turnover of the entire retainer to this Court as property of the estate for the benefit of the Debtor in this Chapter 11 proceeding. The Court cannot direct the return of the retainer to Behco and Driffield, the unsecured creditors, since they were a party to, or participated in, the failure to disclose critical information to this Court. Indeed, the Debtor's Managing Agent was present at numerous Hearings before this Court, and was well aware of this Court's concerns. He was in communication with Mr. Behbehani, the sole shareholder of the Debtor, and the individual that controlled Behco and Driffield, essentially the only unsecured creditors of the Debtor. The Court must conclude that the Debtor's Managing Agent, as well as Mr.

---

an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

**2.** Bankruptcy Rule 2016(b) provides as follows:

(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file with the court within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed.

Behbehani, chose not to disclose this information.

The Debtor's estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

■ Arizona law also offers no exception to the general rule that a retainer, taken by a debtor's attorney for services to be rendered during a bankruptcy case, is to be held in trust for the debtor, except to the extent that attorneys' fees are allowed by the Court pursuant to Bankruptcy Code Sections 330 and 331 governing compensation. *See e.g., Leff, supra* 88 B.R. 105, 107; *In re Tri–County Water Ass'n, Inc.,* 91 B.R. 547, 550–51 (Bankr.D.S.D.1988); *In Kinderhaus Corp.,* 58 B.R. 94, 97 (Bankr. D.Minn.1986). Under Arizona law, property held by an attorney for the client's benefit is held in trust. *Matter of Carragher,* 157 Ariz. 219, 756 P.2d 316, 319 (1988). The current ethical rules adopted by the Arizona Supreme Court to govern the conduct of Arizona attorneys require attorneys to segregate "property of client or third persons." ER 1.15, Rule 42, Rules of the Supreme Court of Arizona. Therefore, a retainer, comprised of the funds received by Debtor's Counsel as prepetition or postpetition payments from the Debtor or an interested party, is estate property held in trust for the benefit of the estate. If Debtor's counsel and the party supplying the funds to the Debtor fail to disclose the source of those funds, then the interest in the trust funds devolves to the Debtor under 11 U.S.C. § 541(a)(7) for the benefit of all creditors and interested parties.

II

The second issue is whether Debtor's proposed counsel has rendered services to the estate that should be compensated, even though this Court is not able to appoint Applicant as counsel for the Debtor.

■ This Court concludes that counsel's failure to disclose forthrightly the *source* of its compensation should warrant denial of all compensation. The *Kendavis* Court stated:

"[A] failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid." *Chapel Gate Apartments, supra* 64 B.R. 569, 575.

*In re Kendavis, supra* 91 B.R. 742, 759–60. See *e.g. In re Kero–Sun,* 58 B.R. 770, 780–81 (Bankr.D.Conn.1986) ($75,000.00, received postpetition by debtor's counsel from secured creditors, plus imputed interest thereon, forfeited to estate); *WPMK,* 42 B.R. 157, 163 (Bankr.D.Haw.1984) ($25,-000.00, paid postpetition to debtor's counsel by debtor's principal and investors, ordered to be returned to debtor's estate). Moreover, by receiving compensation from Debtor's creditors, Debtor's Counsel had, and has, a pecuniary interest materially adverse to the interest of the secured creditors and the interests of the estate—a conflict of interest that requires a denial of all compensation to Debtor's Counsel. *Kendavis, supra,* 91 B.R. at 762 ("[w]here a conflict of interest is apparent, all fees should be denied unless for exceptional reasons partial compensation should be allowed"); *In re Marine Power & Equipment Co., Inc.,* 67 B.R. 643, 651 (Bankr.W. D.Wash.1986) (receipt of compensation from a party other than the debtor constituted a conflict which warranted denial of all compensation, "even in the absence of a finding of an actual conflict of interest."); *In re WPMK, Inc.,* 42 B.R. 157, 163 (Bankr. D.Haw.1984) (debtor's counsel's fee application denied when debtor's counsel received compensation from debtor's principal and creditors); *In re 765 Associates,* 14 B.R. 449, 451 (Bankr.D.Haw.1981) (compensation denied to debtor's counsel paid by debtor's principal and creditors). Moreover, an analysis of the evidence presented by Debtor's proposed counsel at the evidentiary hearing on July 20, 1989, reflects little, if any, legal work undertaken by the Applicant that actually assisted or benefited the estate. The vast majority of the services rendered by Applicant constituted Applicant's defense of an untenable position. A failure to disclose forthrightly to

the Court and all creditors and interested parties all of the disclosures required under Bankruptcy Code Section 329 and Bankruptcy Rule 2016 is hardly a position to be defended. It also is not a position for which Debtor's proposed counsel should receive its legal fees and costs.

Based upon the foregoing,

IT IS ORDERED that Debtor's proposed counsel shall surrender the entire retainer received by it to the Clerk of the Bankruptcy Court for the benefit of all creditors and interested parties of this Debtor.

IT IS FURTHER ORDERED that any compensation for legal services and costs incurred by McDaniel & Jaburg, McDaniel & Lee, and Jaburg & Wilk is DENIED.