**In re D. Earl CAMPBELL and J. Mae Campbell, Husband and Wife, Debtor.**

**Bankruptcy No. 92–03516.**

United States Bankruptcy Court, D. Idaho.

Nov. 29, 1994.

6. 28 U.S.C. § 1961.

Steven A. Adamson, Nampa, ID, pro se.

Gary L. McClendon, Staff Atty., Office of U.S. Trustee, Boise, ID.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

By motion, the United States Trustee seeks an order of disgorgement of attorney's fees from Attorney Steven A. Adamson in the amount of $4,000.00.

### FACTS

This case was filed by the debtors, D. Earl Campbell and J. Mae Campbell under chapter 11, on November 5, 1992. The petition and schedules filed by the debtors included a statement of attorney compensation to the effect Mr. Adamson would be paid the sum of $100.00 per hour "as needed from the debtors' earnings." The statement of financial affairs indicated no payments had been made to Mr. Adamson except for the payment of the filing fee.

On November 18, 1992, Mr. Adamson filed an application for appointment as a professional person. Accompanying the application was a verified statement of Mr. Adamson indicating he has a disinterested person and had no connections with the debtors, with their creditors or with any other parties in interest.

However, Mr. Adamson represented the debtors in a previous chapter 13 bankruptcy proceeding which the debtors filed on August 14, 1992. The debtors' chapter 13 proceeding was dismissed on October 27, 1992. Mr. Adamson also represents the International Mustard Company ("IMC"), a corporation owned by Mr. Campbell in a Chapter 11 bankruptcy filed by IMC on August 17 of 1992. On January 28, 1994, the IMC proceeding was converted to chapter 7. IMC's bankruptcy proceeding is still pending.

The United States Trustee objected to Mr. Adamson's application on the grounds the debtors' schedule listed International Mustard as a co-debtor and Mr. Adamson had been retained to represent that corporation. Due to the Trustee's objection, no order was ever entered approving Mr. Adamson's employment as a professional person in the debtors' chapter 11.

The debtors' proposed plan of reorganization, filed in the present proceeding, on September 28, 1993, indicated as part of its description of the costs and expenses of administering the estate, that Mr. Adamson had received distributions from Cole Farms, Inc., in the sum of $4,000.00 which had been applied to his claim against the debtors for attorney's fees incurred in connection with the chapter 11 case. Based on the statement in the chapter 11 plan the Trustee filed the present motion for disgorgement of $4,000.00 in attorney fees.

Mr. Adamson has responded to the disgorgement motion in the form of a declaration which sets forth the factual contentions on which he claims the disgorgement order ought not to be granted.

His assertions arise out of the sale of 1990 Custom Weld 22' boat and trailer which occurred during the debtor's previous chapter 13 proceeding. In the chapter 13 proceeding, the debtors listed the boat and trailer with a value of $16,000.00 securing Key Bank's claim of $21,212.97. In his declaration, Mr. Adamson testified the boat was registered to L'il Bit Land & Livestock, Inc.,

a corporation represented by the debtors to Mr. Adamson to be owned by the Campbells' adult children. Mr. Adamson testified he listed the boat in the Chapter 13 schedules because the boat was subject to a security interest held by Key Bank of Idaho, securing a purchase money loan to J. Mae Campbell.

Key Bank filed a motion for relief from the section 362 automatic stay to foreclose its interest in the boat. In September of 1992, Mr. Adamson negotiated an arrangement with Key Bank and the debtors whereby the debtors would not contest the motion for relief from stay, and Mr. Adamson would purchase the Bank's security interest for $17,000.00 after the Key Bank obtained relief from stay.

On August 28, 1992, Mr. Adamson filed a chapter 13 plan on behalf of the debtors which valued the boat at $16,750. The plan proposed that payment to secured creditor Key Bank would be made outside the plan as follows:

$16,750 shall be paid upon confirmation of the Plan. This shall be funded by a sale of the boat which sale shall be deemed approved upon confirmation.

Neither the plan nor the disclosure statement revealed that Mr. Adamson would be the purchaser of the boat and/or the security interest.

Mr. Adamson then contacted Mr. Kenneth Cole of Cole Farms Inc. and agreed to sell him the buy-out deal with Key Bank for $21,500.00. On September 10, 1992, Mr. Adamson paid Key Bank $17,000.00 for the security interest in the boat. Prior to paying the Bank Mr. Adamson received $12,870.00 from Cole Farms, Inc. Cole Farms Inc. paid Mr. Adamson the balance of the $21,500.00 a few months later.

On November 4, 1992, a few days after the Chapter 13 was dismissed, Key Bank assigned all of its right title and interest in the boat to Cole Farms, Inc. in consideration of the sum of $17,000.00. The order approving accounting, discharging Trustee and closing the Chapter 13 estate was entered on November 5, 1992.

Mr. Adamson testified he informed the debtors that he was going to make a profit on the boat transaction. He agreed to credit the $3,500.00[1] profit he would make on the deal to the legal fees owing to him for representation of IMC in its chapter 11 bankruptcy. Mr. Adamson testified that he credited the $3,500.00 to IMC's account in his books.

The plan of reorganization filed in the present chapter 11 makes the following statements regarding the payment of Mr. Adamson's attorney fees and the boat transaction:

CLASS 1, *Costs and expenses of administration.* . . . To date, the counsel for the debtor, Steven A Adamson, has received distributions from Cole Farms, Inc., in the sum of $4,000.00 which have been applied to the attorney fees incurred in connection with this case. Said counsel has received no post-petition payments for his services in connection with this proceeding. Cost of administration to be incurred are estimated to be in the sum of $10,000.00.

Cole Farms, Inc.'s claim is described as follows:

CLASS 7. *Inconsequential or Burdensome Property:* This class includes all property of the estate which is burdensome to the estate or of inconsequential value. This class includes the claims of **Cole Farms, Inc.,** holder of a security interest in the Debtors Customweld boat, which was assigned from Key Bank of Idaho. The Debtors surrendered said boat to this claimant in satisfaction of the claim and the surrender is hereby approved and ratified. Should there remain any deficiency which would extend to the Debtor's estate, the deficiency if uncontested by Debtors or allowed by the Court, sale: 1) be included in Class 8 and receive appropriate treatment thereunder, or 2) after notice and a hearing, be classified as some other class deemed appropriate by the Court.

---

1. In a letter to the Trustee dated September 2, 1994 and admitted as Exhibit 3, Mr. Adamson told the Trustee that he had credited $4,000.00 to IMC's account. However, according to the figures given by Mr. Adamson in his declaration, the amount of the profit he received from the transaction was $4,500.00. ($21,500 minus $17,000 equals $4,500).

Mr. Adamson prepared and signed the plan of reorganization. However, Mr. Adamson denies that he received the $4,000.00 listed for attorney fees in connection with this bankruptcy proceeding. Instead, he contends the inclusion of his own claim in the plan in this proceeding is a mistake. Mr. Adamson testified he prepared the plan under extreme time constraints and that he used a draft plan of reorganization he was preparing for the IMC proceeding to create the Campbells' chapter 11 plan. The reference to payment for fees was part of the IMC plan and should not have been included in the Campbell plan.

Because no plan of reorganization was ever filed in the IMC bankruptcy, it is difficult to determine if the IMC draft plan included a statement that Mr. Adamson had received either $3,500.00 or $4,000.00 from Cole Farms Inc. in payment for IMC's attorney fees.

Other than his declaration, and his testimony before this Court Mr. Adamson has not provided evidence showing the $4,000.00 was credited to IMC's account.

The Court takes judicial notice of the fact the IMC file does not contain any order authorizing interim compensation of Mr. Adamson. Nor has Mr. Adamson disclosed the receipt of payment in the IMC bankruptcy.

### Discussion

■ Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny. *In re BOH! Ristorante, Inc.,* 99 B.R. 971, 972 (9th Cir. BAP 1989) (quoting S.Rep. No.

95–989, 95th Cong.2d Sess. 39 (1978), U.S.Code Cong.Admin.News 1978, pp. 5787, 5825).

Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, reflect Congress' concern about legal representation of the debtor. Section 327(a)[2] requires prior approval of the employment of an attorney representing the trustee or the debtor in possession. Section 327 does not merely limit an attorney's right to receive fees, "an important purpose of an application for employment pursuant to § 327 is to make certain that the person sought to be employed does not hold an interest adverse to the estate." *In re BOH! Ristorante, Inc.,* 99 B.R. at 973.[3]

■ Accordingly, approval under section 327 is required even if payment of attorney's fees is not sought as an administrative expense. *BOH!,* 99 B.R. at 972; *In re Land,* 116 B.R. 798, 805 (D.Colo.1990), *aff'd* 943 F.2d 1265 (10th Cir.1991). *See* Federal Rule of Bankruptcy Procedure 2014(a).

■ Here, due to his representation of co-debtor IMC, Mr. Adamson's representation of the debtors has never been approved by this Court. Thus, Mr. Adamson's representation of the debtors in this proceeding was a violation of section 327 regardless of whether he has applied for or received payment in connection with such representation. Because of this inherent conflict of interest, his representation of the debtors in their chapter 13 and present chapter 11 proceeding may jeopardize his right to receive payment in the IMC bankruptcy.

Sections 330 and 331 require court scrutiny of payments made to the debtor's attorney during the pendency of the bankruptcy.

Section 329[4], the section at issue here, requires court scrutiny of prepetition pay-

---

**2.** 11 U.S.C. § 327(a) provides:

  (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
  11 U.S.C. § 327(a).

**3.** Section 327 requires that attorneys employed to represent the estate must be disinterested is emphasized in section 328(c):
    (c) [T]he court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 ... of this title if, at any time during such professional person's employment under section 327 ... such professional person is not a disinterested person ...

**4.** Code section 329 provides:

ments made to attorney in connection with the bankruptcy proceeding. Section 329(b) allows a court to examine prepetition payments for attorneys' fees and authorizes the court to require disgorgement of excessive fees to whatever entity paid them.[5] Section 329(a) aides the implementation of section 329(b) by requiring attorneys who have represented the debtor in connection with the bankruptcy proceeding to disclose to the Court any compensation they have received for such services.

Federal Rule of Bankruptcy Procedure 2016(b) requires the 329(b) disclosure to be made within 15 days of the order for relief. Rule 2016(b) requires a supplemental disclosure be made within 15 days of any payment not previously disclosed.

■ Failure to comply with the disclosure requirements of section 329(a) is sufficient grounds for requiring the disgorgement of attorney's fees. *In re Fricker*, 131 B.R. 932, 939–42 (Bankr.E.D.Pa.1991); *In re Crimson Investments, N.V.*, 109 B.R. 397, 402 (D.Ariz. 1989); *In re WPMK, Inc.*, 42 B.R. 157 (Bankr.D.Hawaii 1984).

■ The Trustee contends Mr. Adamson violated section 329(a) by failing to disclose that he had received $4,000.00 compensation in connection with the present case. The factual scenario presently before the Court illustrates the need for such review as Mr. Adamson's explanation is even more disquieting than the Trustee's contention.

Mr. Adamson contends he did not receive any compensation from the debtors in connection with the Campbells' present bankruptcy proceeding but that he did apply $3,500.00 to IMC's account for representation of IMC in connection with the IMC bankruptcy proceeding. If Mr. Adamson is telling the truth, he has received a postpetition payment in the IMC bankruptcy without prior court authorization under section 331.

It also appears that by taking a personal profit from the sale of an asset of the debtor's previous chapter 13 without informing the Court, the chapter 13 trustee or the creditors, Mr. Adamson may have taken property of the chapter 13 estate. Mr. Adamson's agreement to credit the profit to IMC's account did not result in the return of the profit for two reasons. First, the profit belonged to the debtor's chapter 13 estate not to IMC's chapter 11 estate. Giving the profit to IMC in no way excused taking the profit from the chapter 13 estate. Second, because IMC is in bankruptcy, Mr. Adamson would not necessarily receive full payment for his services rendered in connection with that case. Thus, even if Mr. Adamson had obtained the profit from IMC rather than from the Campbells, off setting the profit against his bill for attorney fees would not necessarily have the same result as if Mr. Adamson had returned the profit to IMC.[6]

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
　(1) the estate, if the property transferred—
　(A) would have been property of the estate; or
　(B) was to be paid or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

　(2) the entity that made such payment.
11 U.S.C. § 329.

5. "[F]ees paid to the debtor's counsel may be reviewed [under section 329] regardless of their source." *In re BOH! Ristorante, Inc.*, 99 B.R. at 972; *see also In re Furniture Corporation of America*, 34 B.R. 46, 47 (Bankr.S.D.Fla.1983) (payments made by a third party are subject to review under section 329).

6. This difference is illustrated in Mr. Adamson's September 2, 1994 letter to the Trustee:

My agreement with Mr. Cole was that if International Mustard Company paid its attorney bill that it would be incurring in full, I would refund Mr. Cole a portion of the purchase price and he would get a better deal on his purchase. If the bill was not paid, I would retain the entire profit and Cole Farms would be comfortable with the purchase price paid.

If Mr. Adamson had included the statement which he now claims was a mistake in IMC's plan of reorganization, he would have mislead the Court and the creditors as to the nature of the payment. The statement in the debtors' chapter 11 plan says that Cole Farm's Inc. paid the debtor's attorney fees. However, according to Mr. Adamson's declaration, although the funds used to pay the fees are traceable to Cole Farm's Inc., Cole Farm's Inc. did not pay IMC's attorney fees. Rather, the fees were paid with profit Mr. Adamson obtained from his dealings with debtors' chapter 13 estate. Thus, the fees were paid by the Chapter 13 estate not Cole Farms, Inc.

If the $4,000 was credited to IMC as stated by Mr. Adamson in his declaration, then Mr. Adamson violated section 329(a) by failing to disclose the $4,000 to the court in the IMC proceeding. Failure to disclose payment under section 329(a) is grounds for return of the fees pursuant to section 329(b)(2). Accordingly, if Mr. Adamson's declaration is factual, he should return the $4,000.00 to the Campbells. The Campbells' right to the funds is of course property of the estate.

On the other hand if the statement made in the debtors' proposed plan is accurate, and Mr. Adamson received the fees in connection with the present proceeding, Mr. Adamson should be required to return the fees for failure to comply with the 329(a) disclosure requirements in the present proceeding. Because the money would have been part of the debtors' estate if Mr. Adamson had not taken the funds, the fees must be returned to the estate pursuant to section 329(b)(2).

Therefore, as the fees must be returned to the estate under either scenario, the Trustee's motion will be granted and Mr. Adamson will be required to disgorge attorney's fees in the amount of $4,000.00 to the debtors' estate.

A separate order will be entered.

