775 P.2d 1080

**In the Matter of a Member of the State Bar of Arizona, Kenneth McClain ARRICK, Respondent.**

**No. SB–88–0012–D.**

Supreme Court of Arizona, En Banc.

June 8, 1989.

Browder & Kenney, P.C. by Robert W. Browder, Phoenix, for respondent.

Sundberg & Mousel by Gary M. Sundberg, Phoenix, for State Bar of Arizona.

GORDON, Chief Justice.

This case involves an attorney who failed to comply with court orders, inappropriately withdrew funds from his client's trust account, and failed properly to advise and take responsibility for the handling of estate matters. Because the attorney's conduct did not comport with the ethical rules, we impose a six-month suspension from the practice of law. We further order respondent to satisfactorily complete an estate and probate course at an ABA-accredited law school before handling any future probate matters. We have jurisdiction pursuant to Rules 46(a), 52, and 53(e), Ariz.R. Sup.Ct., 17A A.R.S. (1988).

PROCEDURAL HISTORY

The State Bar of Arizona filed a seven-count complaint on August 22, 1985, charg-

ing respondent, Kenneth McClain Arrick, with violating the disciplinary rules of the former Arizona Code of Professional Responsibility, Rule 29(a), Ariz.R.Sup.Ct., 17A A.R.S. (1973).[1] *See* Rule 53(c). The Local Administrative Committee (Committee), pursuant to Rule 53(c)(4), filed its report August 18, 1987. Based on Counts One, Two, and Seven of the complaint, the Committee recommended an informal reprimand for violations of DR 1–102, DR 5–104, and DR 9–102 of the Code of Professional Responsibility and Rule 29(b) of the Former Rules of the Arizona Supreme Court. Count One involves respondent's delayed compliance and willful disobedience of a court order. Count Two involves respondent's unauthorized removal of funds from his client's trust account and delay for more than 30 days in repaying those funds. Count Seven involves respondent's failure properly to advise the personal representative of an estate and his failure to take full responsibility for correcting a court order regarding that estate. We will discuss each of these charges in greater detail below. The Committee recommended dismissal of Counts Three, Four, Five, and Six of the complaint.

The Disciplinary Commission (Commission) reviewed the case on November 14, 1987, and filed its report on January 20, 1988, pursuant to Rule 53(d). The Commission affirmed the Committee's findings of fact and conclusions of law, but rejected the Committee's recommendation for an informal reprimand and, instead, recommended a six-month suspension from the practice of law. The Commission adopted the Committee's recommendation to dismiss Counts Three, Four, Five, and Six. We agree that dismissal is appropriate on these counts and, therefore, will not address them.

1. Respondent's misconduct occurred before February 1, 1985; therefore, former Rule 29(a), Arizona Code of Professional Responsibility, governs respondent's conduct rather than current Rule 42 of the Rules of Professional Conduct. Order Deleting Rules 27 Through 49, Of The Supreme Court, And Substituting Amended Rules 27 Through 121, Rules of the Supreme Court, In Their Place, *reprinted in* 17A A.R.S. at 212 (1988). However, because the State Bar made its probable cause determination after February 1, 1985, the current rules relating to disciplinary procedures govern. *See id.* References to the Arizona Supreme Court rules will be cited as "Rule ___" and will refer to the current rules unless otherwise indicated.

In accordance with Rule 53(e), respondent filed his notice of appeal on January 29, 1988, thus bringing the matter properly before this Court. In disciplinary matters against members of the State Bar, we are an independent trier of fact and law and will impose discipline only if we find clear and convincing evidence of misconduct. *Matter of Kersting*, 151 Ariz. 171, 172, 726 P.2d 587, 588 (1986); *In re Neville*, 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). In reaching our conclusions, we give deference and serious consideration to the findings and recommendations of the Committee and the Commission. *In re Pappas*, 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988).

FACTS

Background

In September of 1979, respondent agreed to represent Jeanette Phebus in legal matters arising from the death of her husband, Thomas Phebus. Thomas Phebus died September 15, 1979, and named Jeanette Phebus as personal representative of his estate. At the time of his death, Thomas Phebus owned a substantial interest in a number of oil leases, other personal assets, and life insurance policies. Between September 24, 1979, and November 17, 1980, respondent rendered legal services to Jeanette Phebus in her capacity as personal representative of the estate of Thomas Phebus. Respondent billed and received $3,260. The basis for Count One of the complaint is respondent's failure to comply with a court order regarding reimbursement and overpayment of these funds.

On November 9, 1979, the last will and testament of Thomas Phebus was admitted to probate. The will indicated Thomas Phebus had no living issue and left his entire estate to Jeanette Phebus. Subsequently, Traci Ann Phebus, the daughter of Thomas Phebus by a prior marriage, filed a petition opposing probate of the will and requesting a determination of intestacy. In August, 1982, the parties entered into a will contest settlement agreement whereby Traci would receive a 30% interest in the oil leases and Jeanette would retain a 70% interest. The terms of the agreement required respondent to deposit the royalty income from the leases into his trust account for subsequent distribution. The royalties earned $2,659.15 in interest while in respondent's trust account. Respondent's unauthorized removal and deposit of the $2,659.15 into his personal account forms the basis of Counts One and Two of the complaint. The agreement further provided that respondent receive $10,000 in attorney's fees.

Jeanette Phebus died intestate September 12, 1982. Between November 17, 1980, and September 12, 1982, respondent performed a variety of personal and legal services for her. He kept no records concerning the amount of time or the nature of those services. He testified that his relationship with Jeanette Phebus during this period was "almost like a son."

On November 8, 1982, the court appointed Becky Johnson, Jeanette's niece, to serve as personal representative of her estate. Respondent prepared the petition and order of intestacy as attorney for the Estate of Jeanette Phebus. The petition incorrectly stated that Mary Rose, a friend of Jeanette Phebus, was entitled to inherit from Jeanette Phebus and failed to name known heirs entitled to inherit. When Becky Johnson notified respondent of the errors, he instructed her to appear before the presiding probate judge to correct it. Respondent's failure properly to explain the Mary Rose situation and take full responsibility for correcting the court order forms the basis of Count Seven of the complaint.

In August 1983, while serving as the personal representative of Jeanette's estate, Becky Johnson became the successor personal representative of the Thomas Phebus estate. Following August 1983, she served as personal representative of both estates.

Procedural Events

On November 10, 1982, respondent filed a $15,000 creditor's claim against the Estate of Jeanette Phebus. The creditor's claim asserted that respondent expended over 75 hours on Jeanette Phebus' behalf. Respondent's testimony before the Com-

mittee is sometimes contradictory, but essentially claims that the 75 hours included both legal services and personal, non-legal services rendered to Jeanette Phebus from November 17, 1980, to the time of her death, September 12, 1982. Respondent kept no records concerning the amount of time or nature of services rendered during that period and failed to advise the court that he already had received $3,260 in previously billed attorney's fees and was scheduled to receive an additional $10,000 for the will contest settlement agreement.

On January 4, 1983, respondent filed the will contest settlement agreement in the Estate of Thomas Phebus and received the $10,000 in attorney's fees pursuant to that agreement in February, 1983.

On April 6, 1983, respondent filed a Petition for Attorney's Fees against the Estate of Thomas Phebus for $15,000. As in the creditor's claim, respondent failed to advise the court he had already received $3,260 for attorney's fees and, by this time, had also received the $10,000 for the will contest settlement agreement. The petition indicates an excess of 125 hours expended in services to the Estate. In his testimony before the Committee, respondent conceded that this petition includes and essentially overlaps the 75 hours previously submitted on the creditor's claim against Jeanette's estate.

It appears respondent wanted $15,000 in addition to the $3,260 and the $10,000, a total of $28,260, in attorney's fees for services rendered to each estate and to Jeanette Phebus personally. Because he kept no records itemizing his services and because he was uncertain where to collect the additional money, he filed both the creditor's claim against the Jeanette Phebus estate and the petition for attorney's fees against the Thomas Phebus estate. Collection on either one, he testified, would satisfy the other.

In April, 1983, Becky Johnson, as personal representative of both estates, became dissatisfied with respondent's services and fired him.

On October 13, 1983, the court issued an order on respondent's petition for attor-ney's fees against the Thomas Phebus estate. The court order allowed respondent "reasonable attorney's fees for services rendered to Jeanette Phebus as Personal Representative in the sum of $10,000 and that *the Estate of decedent shall receive credit against said sum all amounts heretofore paid to Kenneth M. Arrick* from the assets of the Estate of decedent." (Emphasis added.) By this time, respondent had received the previously billed $3,260 and the $10,000 on the will contest settlement agreement, a total of $13,260. He did not return the excess or overpayment of $3,260.

Instead, on October 18, 1983, respondent withdrew an additional $2,659.15 (the interest income from the oil lease royalties) from the trust account for the Thomas Phebus estate. Correspondence and testimony reflect that respondent interpreted the October 13, 1983, order to award $10,000 in addition to the attorney's fees previously received. Therefore, respondent withdrew this amount to apply it to the $10,000 he claimed was due under the October 13, 1983, order.

On October 20, 1983, Becky Johnson, through her new attorney, Robert F. Jeckel, demanded reimbursement of all monies (the $3,260 and the $2,659.15) in excess of the $10,000 awarded by the October 13, 1983, order.

On October 25, 1983, in correspondence to Robert F. Jeckel, respondent essentially refused to reimburse the monies requested and, instead, claimed over $5,000 was still due for representation of the estate.

On January 26, 1984, Becky Johnson filed a Petition to Recover Possession of Estate Assets on behalf of the Thomas Phebus estate requesting reimbursement of the $3,260 and the $2,659.15 from respondent.

On March 8, 1984, the court denied respondent's creditor's claim against the Jeanette Phebus estate and ordered respondent to pay back the $3,260 to the Thomas Phebus estate. Apparently, due to an oversight, the court neglected to mention the $2,659.15. On July 23, 1984, the court

issued an amended order requiring respondent to reimburse the $2,659.15 in addition to the $3,260 previously ordered returned.

Respondent did not pay the $2,659.15 until November 2, 1984. Almost 2 years later, on January 9, 1986, he finally paid $3,750 ($3,260 plus interest). On February 18, 1986, respondent paid additional interest due on the $3,260 as well as attorney's fees and costs.

## THE CHARGES

### Count One:

The Delay in Compliance with the March 8, 1984, Court Order

▆ The Committee and the Commission found that respondent violated: DR 1–102(A)(1), (5), and (6); DR 9–102(B)(4); and former Supreme Court Rule 29(b)(1) and (2).[2] The Committee concluded and the Commission agreed that respondent's delay in complying with the March 8, 1984, order as amended July 23, 1984, constituted: conduct prejudicial to the administration of justice; conduct adversely reflecting on his fitness to practice law; and willful disobedience to an order of a court. We believe that these findings are supported by clear and convincing evidence.

Evidently, respondent interpreted the October 13, 1983, order as granting $10,000 in addition to the $10,000 for the will contest and the $3,260 he had already received as attorney's fees. Apparently, this interpretation guided his behavior for the next two and one-half years. Respondent now

agrees that this interpretation was clearly wrong.

The March 8, 1984, court order was crystal clear: "Kenneth M. Arrick shall return and pay to the Estate of Thomas R. Phebus, deceased, the sum of $3,260.00." The order, as amended July 23, 1984, was equally clear: "Kenneth M. Arrick shall return and pay to the Estate of Thomas Raymond Phebus, deceased, the sum of $2,659.15 in addition to the sum of $3,260.00 heretofore ordered returned."

We strongly disapprove of respondent's conduct. An attorney must set an example for the general public that obedience to a court order is not a matter of personal convenience and cannot be ignored or disregarded without serious consequences. We agree that respondent's almost two-year delay in compliance with this clear and direct court order violates DR 1–102(A)(1)(5) and (6), DR 9–102(B)(4), and former Arizona Supreme Court Rule 29(b)(1) and (2).

### Count Two:

The Unauthorized Withdrawal of $2,659.15 and Failure to Repay for Over 30 Days

▆ The Committee and the Commission found that respondent violated DR 1–102(A)(1) and (6), and DR 9–102(B)(4) and former Supreme Court Rule 29(b)(1) and (6).[3] The Committee concluded and the Commission agreed that respondent's unauthorized removal of $2,659.15 from the trust account for the estate of Thomas

---

**2.** DR 1–102 provides in pertinent part:
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 9–102 provides in pertinent part:
(B) A lawyer shall:
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
Rule 29(b) Grounds for disbarment, suspension or censure. Grounds for disbarment, suspension, or censure of members shall be as follows:
(1) Violation of the Code of Professional Responsibility adopted by the American Bar Association, as amended by this Court.

(2) Willful disobedience or violation of an order of a court requiring him to do or forebear to do an act connected with or in the course of his profession.

**3.** *See* note 2, *supra.*
Rule 29(b) provides:
Grounds for disbarment, suspension or censure of members shall be as follows:
(6) Failure for thirty days after written demand and payment or tender of the fees and expenses due him from his clients to pay over or deliver to his client any money or other property belonging to his client which he has received as attorney in the course of his employment.

Phebus and deposit of those funds into his personal account constituted: (1) conduct adversely reflecting on his fitness to practice law; (2) a violation of his duty to promptly pay over funds in his possession which the client requested and was entitled to receive; and (3) failure for more than thirty days after written demand to pay over to the estate of Thomas Phebus monies belonging to the estate that respondent had received as attorney during his employment. We believe that clear and convincing evidence supports these findings.

Only five days after the court's October 13, 1983, order limiting respondent's fees to $10,000, respondent withdrew $2,659.15 from the Thomas Phebus estate trust account and deposited the funds in his personal account. We believe respondent's interpretation of the October 13, 1983, court order was objectively unreasonable. However, assuming for the moment that it was reasonable, the October 20, 1983, correspondence from Robert F. Jeckel, the new attorney for the estate, clearly advised respondent that ownership of the funds was in dispute and required respondent immediately to return the funds to the trust account.[4] Instead, respondent kept the money for his personal use and did not repay it until November 2, 1984, over a year later.

Respondent's removal of these funds was unauthorized and improper. His failure promptly to return the money as directed by the amended March 8, 1984, court order violated his ethical obligations under DR 1–102(A)(1) and (6), DR 9–102(B)(4) and former Supreme Court Rule 29(b)(1) and (6).

Count Seven:

Failure Properly to Advise Becky Johnson on Estate Matters and Failure to take Full Responsibility for Correcting a Court Order

 Respondent sought a total of $28,-260 in attorney's fees for services rendered

to Jeanette Phebus for two years before her death, yet he never prepared her will. Just before her death, Jeanette told respondent that she wished to leave a portion of her estate to her friend, Mary Rose. Respondent incorrectly included Mary Rose in the petition for intestacy, indicating that she was entitled to inherit from Jeanette, and omitted some of Jeanette's family members—known heirs entitled to inherit. Further, respondent did not explain to Becky Johnson that Mary Rose could not inherit unless all interested parties agreed and the court approved of the arrangement.

Respondent included Elmer Madsen, Jeanette's brother, in the petition, but mistakenly omitted Elmer's name on the order for probate. Becky Johnson discovered the omission and brought it to respondent's attention. He then instructed her to return to superior court, appear before the probate judge, explain the omission, and have it corrected.

The Committee concluded and the Commission agreed that respondent's conduct violated DR 1–102(A)(6) and former Supreme Court Rule 29(b)(1).[5] We agree. His failure to explain the Mary Rose situation and his failure to take full responsibility for correcting the court order adversely reflected on his fitness to practice law. We believe clear and convincing evidence supports this finding.

DISCIPLINE

Standards

 The three-member Committee recommended an informal reprimand. Six of the seven members of the Commission that heard the case recommended a six-month suspension, but did not explain their recommendation. In the future, we request the Commission to provide us with the benefit

---

4. DR 9–102(A)(2) provides:

Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited [in one or more identifiable interest-bearing trust accounts], but the portion belonging to the lawyer or law firm may be withdrawn when due unless the

right of the lawyer or law firm to receive it is disputed by the client, in which event *the disputed portion shall not be withdrawn until the dispute is finally resolved.* (Emphasis added.)

5. *See* note 2, *supra.*

of its reasoning when its recommendation significantly differs from that of the Committee. *See Matter of Spear*, No. SB–88–0009–D, slip op. (filed May 16, 1989).

This Court has the ultimate responsibility for deciding appropriate discipline. *Neville*, 147 Ariz. at 115, 708 P.2d at 1306. In situations where the recommended sanctions differ, we consider the ABA's *Standards for Imposing Lawyer Sanctions* to assist in our determination. *See Pappas*, 159 Ariz. at 526–28, 768 P.2d at 1171–73; *Matter of Petrie*, 154 Ariz. 295, 302, 742 P.2d 796, 803 (1987). The purpose of lawyer discipline is not to punish the lawyer, but to deter others from similar conduct and to protect the public. ABA, *Standards for Imposing Lawyer Sanctions* 1.1 (1986); C. WOLFRAM, MODERN LEGAL ETHICS § 3.1 (1986); *Pappas*, 159 Ariz. at 526, 768 P.2d at 1171. In deciding the proper sanction for respondent, we are mindful of our goals to prescribe discipline consistent and proportional to that previously imposed in similar situations. *Pappas*, 159 Ariz. at 526, 768 P.2d at 1171.

We note bar counsel's comment at oral argument that he agreed with respondent that suspension would be too severe a punishment. We disagree. Any form of stipulation or agreement between respondent and bar counsel as to the sanction to be imposed is not binding on this Court. *See* C. WOLFRAM, MODERN LEGAL ETHICS § 3.5.1 (1986). Instead, we must exercise our own judgment based on our view of the facts and the seriousness of the offenses. *Id.*

In considering the sanction to impose here, we conclude that respondent's most serious violation involved Count One, the substantial delay in compliance with a court order. Standard 6.22 of the ABA's *Standards for Imposing Lawyer Sanctions* provides:

> Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

The commentary to this standard indicates suspension is appropriate whenever "a lawyer fails to comply with a court order that applies directly to him...." Considering the specific language of the March 8, 1984, court order and respondent's inexcusable delay in compliance, we find this standard particularly applicable. His conduct injured his client and constituted a knowing violation of a court order directly applicable to him. This was not a case of negligence, oversight, or neglect in which a reprimand would be the proper form of discipline. *See* Standard 6.23 and commentary.

Our evaluation of respondent's conduct regarding Count Two of the complaint, the unauthorized withdrawal of $2,659.15 and failure to repay for over 30 days, indicates Standard 4.12 is applicable as well. This standard provides:

> Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

The commentary states: "Suspension should be reserved for lawyers who engage in misconduct that does not amount to misappropriation or conversion. The most common cases involve lawyers who commingle client funds with their own, or *fail to remit client funds promptly.*" (Emphasis added.) We find this comment particularly applicable as well. Respondent knew, or at the very least should have known, that removal of these funds following the October 13, 1983, court order was unauthorized and improper.

We find respondent negligent in his conduct regarding the Mary Rose situation. Respondent testified that he had no experience in handling complex probate cases. Even so, inexperience is no excuse for an attorney directing his client to correct the attorney's own mistake on a court order. Standard 4.53(b) recommends a reprimand for a lawyer's negligence in this situation. However, viewing respondent's conduct in conjunction with his other ethical violations, we find a six-month suspension is appropriate under the circumstances.

Further, in view of respondent's inexperience, his conduct in the handling of both estates, and mindful of our purpose to protect the public, we order respondent to satisfactorily complete a course in estate and probate matters at an ABA-accredited law school before assuming responsibility for future probate matters. As to respondent's failure to keep records as to his time and the nature of his services, we assume this was an isolated incident and hope that his education is not lacking in this regard as well.

Aggravation and Mitigation

We note respondent's lack of prior disciplinary record, his twenty-one years of practice, and his acknowledgement that his conduct involved ethical violations. Respondent openly disclosed all of his activities and testified with candor before the Committee. These mitigating factors indicate that leniency in the term of suspension is appropriate, however, they are insufficient to outweigh the seriousness of his conduct, particularly when we consider the vulnerability of Jeanette Phebus as an aggravating circumstance. Jeanette was seriously ill and isolated from her family for the two years before her death. Respondent stepped in and acted "almost like a son." There were no agreements for payment or bills for services during those two years. Only after she died did respondent attempt to collect an additional $15,000 in attorney's fees. His delay in compliance with the court's order to repay the funds is inexcusable. Considering the ABA's recommended sanctions as applied to the facts of this case, we find a six-month suspension appropriate.

Proportionality

Under the circumstances, imposing a six-month suspension on respondent is proportional to other sanctions imposed in disciplinary matters. In *Matter of Carragher*, 157 Ariz. 219, 756 P.2d 316 (1988), this Court imposed a six-month suspension on an attorney who received $40,000 in estate funds. Even though his bill was $25,000, the attorney retained the additional $15,000 of estate funds for future services to the estate, but failed to keep any records of those services. In *Matter of Watson*, 118 Ariz. 70, 574 P.2d 1289 (1977), this Court imposed a one-year suspension when, in addition to other ethical violations, an attorney mishandled estate matters, including the unauthorized withdrawal of estate funds without a court order or petition for attorney's fees. As in our case, the attorney practiced law for approximately twenty years without any other violations and acknowledged that his conduct violated the Code of Professional Responsibility. In *Matter of Kersting*, 151 Ariz. 171, 726 P.2d 587 (1986), this Court imposed a nine-month suspension when an attorney failed to disclose material facts in a financial transaction involving the transfer of securities to his client.

DISPOSITION

We approve of the Commission's recommendation and impose a six-month suspension from the practice of law, commencing from the date of this opinion. We further order respondent to satisfactorily complete a course in estate and probate matters at an ABA-accredited law school before handling any future probate matters. Pursuant to Rule 53(e)(3), we order respondent to pay $2,030.40 in costs and expenses.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, J., participated in this matter, but retired prior to the filing of this opinion. CORCORAN, J., did not participate in the determination of this matter.