803 P.2d 419

**In re Stephen M. ZANG, a Disbarred Member of the State Bar of Arizona, Respondent.**

**Nos. SB–89–0051–D, SB–90–0017–D. Disc. Comm. Nos. 85–1121, 85–1445 and 85–1326.**

Supreme Court of Arizona, En Banc.

Dec. 27, 1990.

Stephen M. Zang, Payson, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Bar Counsel, Gregg Clarke Gibbons, Staff Bar Counsel, Yigael M. Cohen, Staff Bar Counsel, Michael L. Cantor, Staff Bar Counsel, Phoenix.

## OPINION

CORCORAN, Justice.

### Jurisdiction

The Disciplinary Commission recommended that Stephen M. Zang (respondent) be suspended from the practice of law for one year in matter No. 85–1121, disbarred and ordered to pay restitution in matter No. 85–1445, and disbarred for his conduct in matter No. 85–1326. Because respondent failed to appeal from the Commission's recommendations, these matters were submitted for review on the record. *See* rule 53(e), Rules of the Arizona Supreme Court. We have jurisdiction pursuant to Ariz. Const. art. 3 and art. 6, § 5(3).

We note that we have previously disbarred respondent. *See In re Zang,* 158 Ariz. 251, 762 P.2d 538 (1988). We think it appropriate, however, that we make new disciplinary findings so that the record is complete if respondent applies for readmission in this state or admission in any other jurisdiction.

### Procedural History

Three separate complaints charge respondent with violating numerous provisions of the former Code of Professional Responsibility. The conduct in question occurred before the adoption of the Rules of Professional Conduct, rule 42, Rules of the Arizona Supreme Court. Therefore, former rule 29(a), Arizona Code of Professional Responsibility, governs respondent's actions. *See* Order Deleting Rules 27 Through 49, Of The Supreme Court, And Substituting Amended Rules 27 Through 121, Rules of the Supreme Court, In Their Place, *reprinted in* 17A A.R.S. at 212 (1988). Because the Arizona State Bar commenced proceedings after February 1, 1985, the current rules govern disciplinary procedures. *See* Order, 17A A.R.S. at 212.

The State Bar filed the first two complaints against respondent on January 14, 1987. Counts 2 through 4 in complaint 85–1121 alleged that respondent did not represent his client zealously and failed to act with competence. Counts 2 through 5 in complaint 85–1445 charged respondent with similar misconduct. Respondent was personally served each complaint, but failed to file timely answers. Pursuant to rule 53(c)(1), the hearing committee filed notices deeming the two complaints admitted on April 13, 1987. On February 2, 1989, the committee heard testimony from respondent's former clients. Respondent, however, failed to appear at the hearing to cross-examine witnesses or present his own evidence. The committee's report, filed on August 2, 1989, adopted the factual allegations found in both complaints and the conclusions of law asserted in complaint 85–1445. Noting respondent's prior history of ethical violations, the committee recommended a one-year suspension in complaint 85–1121, and disbarment and restitution in complaint 85–1445.

The Disciplinary Commission heard both matters on September 16, 1989. By a vote of 6 ayes, one nay in complaint 85–1121, and a unanimous vote in complaint 85–

1445, the Commission adopted the committee's findings of fact and conclusions of law, as well as the recommendation of one-year suspension and disbarment. With regard to complaint 85–1121, the Commission concluded, as a matter of law, that respondent violated the ethical rules alleged in the complaint. On December 9, 1989, the Commission unanimously adopted the committee's recommendation regarding restitution in complaint 85–1445 in the amount of $23,000 plus interest.

The State Bar filed complaint 85–1326 on August 11, 1988. Counts 1 and 2 charged that respondent engaged in fraudulent and prejudicial misconduct, neglected legal matters, and failed to zealously represent his client. Because respondent failed to answer within the required period of time, the complaint was deemed admitted on October 26, 1988. *See* rule 53(c)(1). The hearing committee met on February 1, 1989, and filed a report the next day. The committee adopted the factual and legal allegations asserted in Counts 1 and 2 of the complaint, and took notice of a previous disciplinary action. *See In re Zang,* 158 Ariz. 251, 762 P.2d 538. The committee concluded that respondent's conduct was "of an egregious nature warranting the most severe treatment," and recommended disbarment.

The Disciplinary Commission heard the matter on March 11, 1989. Although duly noticed, respondent did not appear for oral argument. The Commission filed its report on May 2, 1989, affirming the hearing committee's findings of fact and conclusions of law. The Commission also adopted the committee's recommendation that respondent be disbarred.

## Discussion

■■■ In disciplinary matters, this court acts as an independent "trier of both fact and law in the exercise of our supervisory responsibility over the State Bar." *In re Neville,* 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985). We do, however, give deference and serious consideration to the reports of the committee and Commission. *In re Pappas,* 159 Ariz. 516, 518, 768 P.2d 1161, 1163 (1988). Because respondent filed no objections to the Commission's recommendations, he has consented to the discipline imposed. *See* rule 53(c)(5). However, before we impose discipline, we must be persuaded by clear and convincing evidence that respondent committed the alleged violations. *Pappas,* 159 Ariz. at 518, 768 P.2d at 1163.

### 1. *Complaint One (85–1121)*

Roberta Malley hired respondent to represent her in her claim for injuries suffered in an automobile accident in Phoenix on September 12, 1982. Malley, however, did not desire to discuss settlements until she had completed extensive medical treatments for her injuries. In May 1983, while Malley was still under active medical care and suffering from the effects of the accident, respondent negotiated a $12,000 settlement with the responsible party's insurance company. Malley declined the settlement, informing respondent that he had not been authorized to negotiate a settlement in any amount.

Thereafter, an investigator employed by respondent attempted to coerce Malley's husband into accepting the $12,000 settlement check for his wife. Malley's husband refused, and Malley subsequently discharged respondent. Respondent countered by demanding $4,000 for legal services and threatening to place a lien on the case. Although Malley obtained other counsel and settled her claim two years later for $25,000, Malley's subsequent attorney experienced difficulty in negotiating with the responsible party's insurer. The insurance company believed it had already entered into a $12,000 settlement agreement with respondent acting with Malley's authority. Moreover, the sum of $4,000—the amount of respondent's threatened lien—was held in trust from Malley's settlement. Malley did not receive the final $4,000 until December 1988.

The hearing committee's report did not set forth conclusions of law in complaint 85–1121. However, the Commission concluded as a matter of law that respondent's conduct violated the following provisions of

the former Code of Professional Responsibility:

DR 6–101. Failing to Act Competently

(A) A lawyer shall not:

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

DR 7–101. Representing a Client Zealously

(A) A lawyer shall not intentionally:

(2) Fail to carry out a contract of employment entered into with a client for professional services....

(3) Prejudice or damage his client during the course of the professional-relationship....

We agree that respondent acted without competence or zeal by failing to heed Malley's desire to postpone settlement discussions, and by negotiating a settlement agreement without her authority. We find clear and convincing evidence in the record to support the Commission's conclusion.

2. *Complaint Two (85–1445)*

On February 23, 1983, Billy Boyle received serious injuries while riding in an automobile driven by an uninsured motorist. The vehicle collided with a tractor-trailer parked illegally on a street in Chino Valley. While receiving medical treatment at a hospital, Boyle was solicited by respondent, through an investigator, for the right to represent him in accident-related matters, including potential claims against the State of Arizona, City of Chino Valley, and a New Mexico-based trucking company. Boyle also possessed three different uninsured motorist insurance policies on his own vehicles. Boyle subsequently signed an agreement retaining respondent as his lawyer.

During the following two years, respondent maintained little if any communication with Boyle. In fact, Boyle testified before the hearing committee that he never personally met respondent. Respondent also ignored numerous letters and telephone calls from Boyle, responding only after Boyle threatened to file a complaint with the State Bar.

A few days before the statute of limitations period on the claims elapsed, respondent urged Boyle to either settle with the three insurance companies or bring a suit in Texas. Pressured by the limitations period and unaware of any means of pursuing claims in another jurisdiction, Boyle reluctantly authorized a settlement with the three insurance companies in the amount of $99,000. Respondent proceeded to negotiate a settlement under the uninsured motorist policies for only $76,000—$23,000 less than the amount authorized by Boyle. Boyle was not informed of the discrepancy until the last settlement check arrived. When Boyle inquired two months later about potential claims against the state, Chino Valley, and the trucking company, respondent stated that an investigation uncovered no liability. Respondent did not mention that other parties injured in the accident had either recovered or settled for substantial sums from the same potential defendants.

The State Bar's complaint is silent as to respondent's efforts to solicit Boyle as a new client. However, the hearing committee found clear and convincing evidence that respondent's subsequent conduct violated DR 6–101(A)(2) and (3) (incompetence) and DR 7–101(A)(3) (failure to represent a client zealously). The Commission adopted the committee's findings, and we agree with both the committee and the Commission. Respondent refused to maintain proper communication with Boyle and neglected his case until a few days before the statute of limitations ran. Respondent then pressured Boyle into approving a settlement with three insurance companies, and failed to adequately pursue liability against at least three potentially responsible parties. Finally, respondent negotiated for an amount far below that which Boyle authorized.

3. *Complaint Three (85–1326)*

Jessie Martin was involved in an automobile accident in July 1980, and later retained respondent to pursue related claims

against the State of Arizona and Arizona Department of Transportation (DOT). The superior court eventually dismissed Martin's case because an associate under respondent's supervision failed to serve an adequate settlement demand letter on public officials before filing a complaint against the state and DOT, as required by A.R.S. § 12–821. Thereafter, respondent not only refused to inform Martin of the dismissal, but wrote letters to Martin leading him to believe that the civil suit was still pending.

Respondent's office filed a subsequent notice appealing the trial court's decision. The court of appeals dismissed the appeal on March 11, 1983, for failure to file an appellant's opening brief. Respondent did not advise Martin about any proceedings on the appellate level. Instead, Martin was informed by another associate under respondent's direction that his complaint had just recently been dismissed, and that an appeal would be extremely costly with little probability of success. Martin was ultimately dissuaded from pursuing an appeal.

The hearing committee assessed respondent's conduct as "a disgrace to the legal profession.... The only plausible explanation supports a complete abandonment of the rules of professional conduct for attorneys at law, the precepts of basic honesty, and the Rules of the Supreme Court of Arizona, all to the damage of the public, courts and the judicial process." We agree, and find clear and convincing evidence that respondent violated DR 1–102(A)(4), (5) and (6), which provided:

(A) A lawyer shall not:

　(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

　(5) Engage in conduct that is prejudicial to the administration of justice.

　(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

We also find clear and convincing evidence of violations of DR 6–101(A)(3) (neglect of legal matters) and DR 7–101(A)(1), (2) and (3) (failure to represent a client zealously).

### Sanctions

Although we give great weight to the recommendations of the committee and Commission, this court ultimately determines the appropriate sanction. *Neville*, 147 Ariz. at 115, 708 P.2d at 1306. We note that "the purpose of bar discipline is not to punish the lawyer but to deter others and protect the public." *In re Kersting*, 151 Ariz. 171, 179, 726 P.2d 587, 595 (1986). The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) also guides our decision. *In re Arrick*, 161 Ariz. 16, 22, 775 P.2d 1080, 1086 (1989). The ABA *Standards* provide that a court should consider the following factors in determining the appropriate sanction to impose: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *Standard* 3.0.

### Complaint One (85–1121)

The hearing committee recommended that respondent be suspended from the practice of law for one year as a result of his conduct in complaint 85–1121. The committee considered disbarment, but concluded that respondent's conduct while representing Malley was "not so egregious as to require recommendation of disbarment." The Commission also recommended suspension, noting that Malley avoided serious injury in the matter after ultimately settling for $25,000, over twice the amount negotiated by respondent.

We disagree with the committee and the Commission, and believe respondent's conduct warrants the more serious punishment of disbarment. By failing to ascertain Malley's objectives and negotiating a settlement without authority, respondent intentionally breached a fiduciary duty to a client, the most important ethical duty a lawyer owes. *See* ABA *Standards*, at 5. With respect to respondent's unethical attempt to coerce Malley's husband into accepting the inadequate settlement, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the

intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." *Standard* 4.61. The record shows that respondent's misconduct impaired subsequent settlement negotiations and deprived Malley of the use of a portion of the settlement for a significant period of time. Finally, we do not find any mitigating factors. That Malley avoided greater harm by refusing the inadequate and unauthorized settlement neither excuses respondent's conduct nor justifies a lesser sanction than disbarment.

We agree with the dissenting Commissioner that a one-year suspension is meaningless in light of respondent's prior disciplinary history and pattern of misconduct, and accordingly order disbarment for conduct in complaint 85–1121.

### Complaint Two (85–1445)

We adopt the recommendation of the hearing committee and the Commission that respondent be disbarred from the practice of law for his conduct in complaint 85–1445. *Standard* 4.41(b) of the ABA *Standards* provides: "Disbarment is generally appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client." Here, respondent neglected viable claims against multiple defendants, and agreed to an inadequate insurance settlement without authority, causing serious injury to his client, Boyle.

We consider respondent's prior disciplinary history and a pattern of misconduct as aggravating factors. *See Standard* 9.22. ABA *Standard* 8.1(b) also states, "Disbarment is generally appropriate when a lawyer has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." Respondent was disbarred in 1988 for actions similar to the conduct in complaint 85–1445, including dishonesty to clients, failure to communicate with clients despite their diligent attempts to contact him, and prejudicial neglect of a client's affairs. *See In re Zang*, 158 Ariz.

251, 762 P.2d 538. We consider Boyle's vulnerability an additional aggravating factor in this case, *see Standard* 9.22, and find no mitigating circumstances.

Finally, fairness dictates that respondent account for the difference between the authorized and actual settlement amounts. Respondent is ordered to pay Boyle restitution in the amount of $23,000 plus interest accruing from February 23, 1985. *See* rule 52(a)(7), Rules of the Arizona Supreme Court (court has power to order restitution to persons financially injured because of professional misconduct); *Standard* 2.8(a) (same).

### Complaint Three (85–1326)

We agree with the Commission and the hearing committee that respondent's egregious conduct while representing Martin warrants the most severe sanction possible. Respondent engaged in a blatant scheme of neglect, dishonesty, deceit, and fraud that caused great injury to his client. *See* ABA *Standard* 4.41(b). We mention prior disciplinary offenses and a pattern of misconduct as aggravating factors. *Standard* 9.22. Respondent was also disbarred in *In re Zang*, 158 Ariz. 251, 762 Ariz. 538, for similar unethical conduct. *See Standard* 8.1(b). There are no mitigating circumstances. Accordingly, respondent is disbarred for his conduct in complaint 85–1326.

### Disposition

Respondent is disbarred in all three matters before this court, and ordered to pay $23,000 plus interest in restitution for conduct in complaint 85–1445. Pursuant to rule 53(e)(3), we also order respondent to pay costs incurred by the State Bar in these proceedings in the amount of $1,547.29.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ.