833 P.2d 700

**In the Matter of Victor A. GARNICE, a Member of the State Bar of Arizona, Respondent.**

**No. SB–92–0029–D.**
**Disc. Comm. Nos. 88–1567, 89–0009.**

Supreme Court of Arizona.

June 2, 1992.

<hr>

J. Douglas McVay, Phoenix, for respondent.

Yigael M. Cohen, Bar Counsel, Bruce Hamilton, Executive Director, State Bar of Arizona, Harriet L. Turney, Chief Bar Counsel, Phoenix, for the State Bar of Arizona.

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly

rendered its decision and no timely appeal having been filed,

IT IS ORDERED, ADJUDGED AND DECREED that:

1. VICTOR A. GARNICE, a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the Commission report attached hereto as Exhibit A.

2. Respondent shall pay to the State Bar of Arizona costs and expenses incurred in this matter in the sum of $2,759.63 with interest at the legal rate, within thirty days from the date hereof as provided by law.

## EXHIBIT A

### DISCIPLINARY COMMISSION REPORT

This matter initially came before the Disciplinary Commission of the Supreme Court of Arizona on February 8, 1992, for oral argument on the hearing committee's recommendation of a 120–day suspension. Six Commissioners heard the matter and adopted the hearing committee's findings and conclusions,[1] with minor amendments.[2] A quorum of the Commissioners was unable to agree upon the appropriate sanction, and further consideration was tabled until March 14, 1992, when the full Commission was present.

Eight Commissioners were present for the deliberations on March 14, 1992.[3]

---

1. Commissioners Hoffman, Bonwell, and Swick were not present; Commissioner Doyle recused. Commissioners Andrews, Bosse, Brown, Rubin, and Suciu, and former Commissioner Richard T. Salvatierra, an ad hoc public member, heard oral argument and adopted the findings and conclusions.

2. The Commission acknowledges that these amendments to the findings of fact are nonmaterial; however, in the interest of accuracy, the clarifications are discussed under "Facts," below.

3. Commissioner Doyle recused himself from this matter.
   *In re Ackel,* 155 Ariz. 34, 745 P.2d 92 (1987), addressed non-attendance at hearings, when a justice of the peace argued that the Commission

on Judicial Qualifications improperly permitted Commission members who had not attended all of the hearings to vote. The Court did not agree with his argument that absence, per se, prohibits a Commissioner from voting, stating, "[D]ue process does not require a voting Commission member to have a perfect attendance record. It does, however, require a voting Commission member to review transcripts of unattended hearings prior to casting his vote." 155 Ariz. at 39.
   Although three of the Commissioners who participated in this matter in March were not present for the February meeting, all three Commissioners reviewed the February transcripts of both the oral argument and discussion.

## Decision

After consideration and review of the oral arguments and the record on appeal, the Commission, by a vote of six to two,[4] rejects the committee's recommendation of suspension, and recommends that Respondent be censured and placed on probation for a period of two years, to include the appointment of a practice monitor and other terms as set forth by separate order of the Commission.

## Facts

The complaint against Respondent contains two separate counts. The first count relates to Respondent's retention, in 1988, to defend an action brought by his client's ex-wife in an attempt to collect child support arrearages. In a number of motions filed with the court, Respondent stated (1) that New York domestic relations law provides that child support abates whenever visitation is denied by the custodial parent; and (2) that the children had been adopted by the ex-wife's present husband. Neither statement was correct.

Respondent failed to adequately research New York law, and failed to make reasonable inquiry into the factual allegations he made to the court regarding the adoption of the children, in violation of ER 3.3 and ER 8.4(d).

The Commission finds that the committee erred in stating that Respondent's client brought an action against his ex-wife; in fact, Respondent was defending his client against an action brought by his ex-wife.

The second count against Respondent relates to his retention, in 1987, by an ex-wife regarding delinquent child support and other matters. Respondent and his client signed a fee agreement, which provided, in part, as follows:

> In the event Client fails to make any payment within 30 days of the date of billing, Attorney's representation of Client will cease, and Client agrees that

Attorney may thereupon transfer any unused trust funds towards payment of unpaid and owing professional fees and withdraw from all representation of Client. Client acknowledges that Attorney has a voluntary and consensual lien upon the documents, file and property of Client in the possession of Attorney to secure all payments due hereunder until paid.

The court subsequently found the former husband in contempt, and entered a judgment against him in the amount of $3,500. The court stated that the ex-husband could purge the contempt finding by selling his car to raise the funds necessary to pay off or reduce the arrearage. The court ordered that Respondent hold the title to the vehicle as security, to ensure that his client received her arrearage from the proceeds. Respondent received the title in early October 1988.

Also in early October 1988, Respondent received a check in the amount of $300, made out to Respondent, which represented the ex-husband's child support payment for the month of October. Respondent deposited the check in his trust account, transferred the funds to his general account, credited his client's account for $300, and indicated that he had done so on the monthly statement sent to his client. Respondent believed his actions were in keeping with the fee agreement. He also subsequently informed his client's boyfriend, who had participated in all of the meetings between Respondent and his client, that he intended to apply those monies to his fees; the boyfriend indicated that was acceptable.

On or about November 4, 1988, Respondent received another $2,300 from the ex-husband, representing the November child support payment, as well as partial payment of the arrearage owed. Again, believing this was pursuant to their fee agreement, Respondent handled these funds in the same manner as the first $300,

---

4. Commissioners Andrews, Bonwell, Brown, Hoffman, Rubin, and Swick voted for censure with probation. Commissioners Bosse and Su- ciu dissented, believing that a period of suspension is the appropriate sanction.

although he did not discuss these funds with either the client or her boyfriend.

Also on November 4, 1988, Respondent's client sent him a mailgram, discharging him from representation and demanding the return of the $300 October child support payment. On November 5, 1988, Respondent responded to his client's mailgram by letter indicating that, pursuant to the retainer agreement, any child support payments he had received on her behalf had been applied to her past due bill, and stating that he planned to convey title to the car in order to raise money to cover his remaining outstanding fees. Although the client failed to satisfy her past due bill, Respondent did not carry out his threat. Instead, he filed a motion to withdraw with the court and, upon receipt of the order of withdrawal, interplead the title with the court, asking that they award him attorney's fees for fees owed to him by his client. That request for interpleader was denied.

Respondent did not return the $2,600 to his client, who eventually filed for bankruptcy. His client has made no request for restitution in this matter.

These actions were in violation of ER 1.15(b) and (c).

The Commission finds that the committee inadvertently gave November 24, 1987, as the date of the fee agreement; the agreement was actually dated December 24, 1987. The Commission also notes that, although the committee's findings of fact state that Respondent filed the Complaint in Intervention several months after being discharged by his client, the interpleader was actually filed less than thirty days after he was discharged.

### Discussion of Decision

Particularly in situations where the Commission's recommendation differs from the committee's recommendation, the Court considers the American Bar Association *Standards for Imposing Lawyer Sanctions Standards* to assist in their determi-

nation of the appropriate sanction. *In re Arrick,* 161 Ariz. 16, 775 P.2d 1080 (1989).

Standard 6.1 addresses the issue involved in Count One (No. 88–1567); false statements and misrepresentation. Standard 6.13 provides for reprimand (censure in Arizona) when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding. Standard 6.12 provides for suspension when the lawyer knowingly submits false information to the court.

In this case, Respondent was not aware that the New York law had changed. His statement of law was a correct reflection of the law prior to its revisions; he simply did not perform thorough research. His statements regarding the adoption of the children can be viewed as ambiguous rather than as misstatements of the facts; Respondent admits he drafted the motions carelessly, not in a deliberate attempt to mislead the court.

Standard 4.1 addresses the issue involved in Count Two (No. 89–0009); failure to preserve a client's property. Standard 4.12 provides for suspension when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client. Standard 4.13 provides for reprimand (censure) when a lawyer is merely negligent in dealing with client property.

In this matter, there is no question that Respondent became aware of the fact that his transfer of the $2,600 to his own general account was against his client's wishes. However, Respondent believed, albeit mistakenly, that he was legally entitled to keep those funds, and that his fee agreement provided for his actions. In retaining the title to the automobile and interpleading it with the court, Respondent, again, was fully aware that he was holding property whose ownership was in doubt; how-

ever, he perceived a risk that his client might not pay his fee should he hand over the property.[5] Further, in his request for interpleader Respondent informed the court of all surrounding circumstances, and fully complied with the court when they denied his request.

The Commission and committee also considered the applicable factors in mitigation, as listed in Standard 9.32. Respondent has exhibited full and free disclosure to the State Bar and has been extremely cooperative throughout the disciplinary process.

In aggravation, as listed in Standard 9.22, Respondent has two prior informal reprimands, one of which was imposed in the midst of these proceedings, and his motive for retaining the child support and the title to the vehicle was apparently selfish.

Recommendations of the hearing committee are entitled to deference and serious consideration. *In re Pappas*, 159 Ariz. 516, 768 P.2d 1161 (1988). In this matter, the Commission engaged in lengthy discussions concerning whether Respondent's actions warranted censure or suspension. However, the Commission recognized that a suspension can be viewed as a more serious sanction for a sole practitioner than for a member of a larger practice, as any suspension of a sole practice is likely to be devastating. Additionally, the majority of the Commission believed that, in both instances, Respondent's actions were not deliberate attempts to deceive the court or misappropriate funds.

The majority of the Commission believes that imposing a public censure, in addition to a probationary period with a practice monitor, will more effectively serve the purpose of discipline, which is to protect the public, the profession, and the adminis-

tration of justice. *In re Pappas*, 159 Ariz. 516, 768 P.2d 1161 (1988).

---

**5.** The comment to ER 1.15 states, in part, "If there is a risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid ... The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration." After the court denied his request for interpleader, Respondent did, eventually, attempt to resolve the dispute over the title through arbitration.