861 P.2d 595

**In the Matter of a Member of the State Bar of Arizona, Walter R. MYBECK, II, Respondent.**

No. SB–93–0058–D.
Comm. No. 91–0085.

Supreme Court of Arizona.

Oct. 1, 1993.

Stuart J. Gerrich, Bar Counsel, Scottsdale, for the State Bar.

## JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal having been filed before the Court,

IT IS ORDERED, ADJUDGED AND DECREED that **WALTER R. MYBECK, II,** a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that pursuant to Rule 52(a)(8), Rules of the Supreme Court of Arizona, the State Bar of Arizona is granted judgment against **WALTER R. MYBECK, II,** for costs incurred by the State Bar of Arizona in the amount of $456.60, together with interest at the legal rate from the date of this judgment.

### EXHIBIT A

#### BEFORE THE DISCIPLINARY COMMISSION OF THE SUPREME COURT OF ARIZONA

Comm. No. 91–0085

In the Matter of

WALTER R. MYBECK, II,
a Member of the State
Bar of Arizona,
RESPONDENT.

DISCIPLINARY COMMISSION REPORT

[Filed Sept. 29, 1993.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on June 5, 1993, for oral argument, pursuant to Rule 53(d), R.Ariz.Sup.Ct. The Commission considered the Hearing Committee's recommendation of suspension. Respondent filed an objection to the Hearing Committee's recommendation.

*Decision on Merits*

After consideration of the oral arguments and review of the record on appeal, a concurrence of the entire Commission rejects the Committee's recommendation of a nine-month suspension, and recommends that Respondent be censured and placed on probation for a period of two years, under the terms and conditions set forth herein.

## Findings of Fact

The Commission unanimously adopts the Committee's findings of fact, with the exception of Finding Number 11, as the Commission does not find that Respondent's failure to file an answer to the complaint, in and of itself, constitutes a failure to participate in the disciplinary process.

## Conclusions of Law

The Commission unanimously adopts the following conclusions of law:

1. The State Bar has carried its burden of proving, by clear and convincing evidence, all of the ethical violations alleged in the complaint.

2. Respondent's conduct was in violation of ER 1.3 and ER 1.4, in that he knowingly failed to perform services for his clients, failed to keep his clients reasonably informed about the status of a matter, and failed to explain a matter to them to the extent necessary to permit the clients to make informed decisions regarding the representation.

3. The absence of a prior disciplinary history is a mitigating factor.

## Probation

The Commission recommends probation for a period of two years, under the following terms and conditions:

1. Respondent shall have an attorney act as a practice monitor, under the following provisions:

    a. The attorney appointed to act as practice monitor shall not be a member of Respondent's family, and shall be agreeable to the State Bar.

    b. The practice monitor will supervise Respondent's law practice and monitor his case load, communications with his clients, and the quality of services rendered. The practice monitor shall have full opportunity to review any files other than those in which a conflict of interest may exist.

    c. The practice monitor will review Respondent's practice on a quarterly basis.

    d. The practice monitor will agree to report to the State Bar any manifestations of conduct falling below minimum standards of the profession as set forth in the Rules of Professional Conduct, Rule 42, Ariz.R.Sup.Ct.

    e. The practice monitor shall be reimbursed for his services by Respondent.

2. Respondent shall participate in the Law Office Management Assistance Program.

3. Respondent shall pay all costs and expenses incurred in connection with this probation.

## Facts

The formal complaint in this matter was filed on September 30, 1992. On October 22, 1992, Respondent filed an acceptance of service, which acknowledged that the action could proceed as if he had been served by a process server. Respondent did not file an answer to the complaint, although he cooperated fully with the investigation and all other aspects of the disciplinary proceedings.

The allegations of the complaint, which were deemed admitted by virtue of Respondent's failure to respond,[1] concern Respondent's lack of diligence in defending two clients ("Clients") and their corporation ("Corporation) in a lawsuit filed against them.

Respondent was retained by the Clients to defend them in a lawsuit concerning solicitation of minority investment in the Corporation. After Respondent filed an answer on behalf of the Clients, the plaintiffs served interrogatories and a request for production of documents upon the Clients. Respondent requested and received a one-month extension to respond to the discovery requests, but failed to respond by the end of that one-month extension.

---

1. Rule 53(c)(1).

The plaintiffs informed Respondent that further failure to respond would result in a motion to compel. Respondent did not respond, and the motion to compel was filed. Respondent did not respond to the motion to compel, and did not comply with the Court's order entered pursuant to that motion. Ultimately, the Court ordered that the Clients' answer be stricken. The Clients were defaulted and a judgment was entered against them, without opposition.

Respondent's failure to participate in the litigation was done without the Clients' permission. He did not specifically inform his Clients of his failure to participate, and did not inform them of the default and judgment entered against them.

Respondent's conduct was in violation of ER 1.3 and ER 1.4.

### Respondent's Statement on Review and Oral Argument

Rule 53(d)(1), Ariz.R.Sup.Ct., provides that "evidence not presented to the committee ... shall not be presented to the commission." The mitigation that Respondent presented in his statement on review and at oral argument before the Commission had not been presented to the Committee and was not a part of the record on appeal. However, Respondent was under the impression, albeit mistakenly, that by providing the State Bar with this evidence during the investigation, the evidence was before the Committee. Respondent states that he did not request a hearing in mitigation because he had no further information to add to that which he had already provided to the State Bar. While the Commission does not excuse Respondent's failure to learn the correct interpretation of the disciplinary rules, it believes that declining to accept the mitigating evidence would be merely punitive. This is not an instance wherein a respondent attempted to justify his behavior by offering evidence at the last minute. Rather, Respondent willingly presented this evidence to the State Bar much earlier in the proceedings, during the investigation. Therefore, the Commission

accepted Respondent's oral argument and statement on review.

Respondent informed the Commission that, while the facts of the complaint are true, they do not provide an accurate picture of the situation as it occurred. Respondent states that, for a number of reasons, he had no other option but to maintain an inactive posture in the subject litigation.

When the Clients initially retained Respondent regarding this litigation, they informed him that the Corporation was a new one and that the plaintiffs were the original incorporators. Respondent subsequently learned that this was not the case; in fact, the Corporation was actually an existing inactive corporation which had been renamed. This fact was significant, as it meant that the Clients had no defense in the matter. Upon learning of the actual situation, Respondent informed the Clients that they had no defense.

Prior to discovering the actual situation with the Corporation, Respondent had also had difficulties with the Clients. They did not provide him with the information necessary to respond to the discovery requests, even after Respondent clearly informed them of the implications of failing to respond. The Clients were aware at this point that their response would subject them to a motion for summary judgment, which could not have been successfully defended. In addition, the Clients repeatedly stated their desire to minimize their costs and exposure in the case.

Respondent states that, had the default not been entered, the Clients would have ultimately been held responsible for an even greater, monetary judgment. Respondent believed that, had he responded to discovery, having learned that the Corporation was not a new one, he could well have been liable for sanctions under other provisions of the ethical rules.

For these reasons, Respondent believes he had no choice but to handle the matter as he did.

Respondent admits that he failed to formally and thoroughly document his commu-

nications with the Clients, which included several meetings with them concerning the progress of the case, both in person and telephonically. Although he did not specifically obtain the Clients' authorization for his inactive posture in the litigation, Respondent states that the Clients were aware of his conduct and that he had their implied consent.

### Discussion of Decision

Particularly in situations where the Commission's recommendation differs from the Committee's recommendation, the Court considers the American Bar Association's *Standards for Imposing Lawyer Sanctions* to assist in their determination of the appropriate sanction. *In re Arrick*, 161 Ariz. 16, 775 P.2d 1080 (1989).

Standard 4.4 addresses lack of diligence. Standard 4.42 provides for suspension when a lawyer knowingly fails to perform services for a client and causes injury or potential injury, or engages in a pattern of neglect and causes injury or potential injury to a client. Standard 4.43 provides for reprimand when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client. Respondent's inactive posture in the litigation was done knowingly, rather than negligently. Before considering the mitigating evidence, the Commission agrees with the Committee that Standard 4.42 applies. However, the Commission had the benefit of hearing mitigating evidence that the Committee did not hear.

Standard 9.3 provides for mitigating factors that may justify a reduction in the degree of discipline to be imposed. As previously stated, Respondent has no prior disciplinary history. In addition, the situation in which Respondent found himself after agreeing to represent the Clients was a difficult one. Respondent believes that his handling of the case resulted in less harm to the Clients than they would have experienced had he actively pursued the litigation. Respondent's conduct in the underlying litigation was a tactic calculated to elicit the best possible result for the Client from a bad situation. The Commission considered this in mitigation.

Recommendations of the Hearing Committee are entitled to deference and serious consideration. *In re Pappas*, 159 Ariz. 516, 768 P.2d 1161 (1988). This is because the Hearing Committee is usually in the best position to judge and evaluate the evidence, since the Committee conducts the hearing. In this instance, however, it was the Commission who had the advantage, as it was the Commission, and not the Committee, who had the opportunity to read Respondent's statement on review and evaluate Respondent, in person, at oral argument. Based on that evaluation, the Commission finds that Respondent's inaction in the lawsuit was a deliberate strategy designed to best benefit his Clients, and was not mere negligence. It was Respondent's careless and inadequate office procedures resulting in poor communication with the Clients which were, in large part, the cause of these ethical violations.

The Commission recognizes that a suspension can be viewed as a more serious sanction for a sole practitioner than for a member of a larger practice, as any suspension of a sole practice is likely to be devastating. The purpose of lawyer discipline is not to punish the offender, but to protect the public, the profession, and the administration of justice. *In re Neville*, 147 Ariz. 106, 708 P.2d 1297 (1985). Upon consideration of these factors and its observation of Respondent, the Commission believes that imposing a public censure, in addition to a probationary period which includes a practice monitor and assistance of the LOMAP program, will more effectively serve that purpose.

RESPECTFULLY SUBMITTED this 4th day of August,

/s/ Raymond W. Brown
Raymond W. Brown, Chair
Disciplinary Commission